FRANK P. D'ANNOLFO & others, trustees,[1] vs. STONEHAM
HOUSING AUTHORITY.

Middlesex. April 4, 1978. — July 6, 1978.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Damages*, Eminent domain, Remittitur. *Value. Eminent Domain*,
Damages. *Evidence*, Value. *Practice, Civil*, Entry of judgment, New
trial, Directed verdict, Judgment notwithstanding verdict, Appeal.
*Verdict*, Special verdict. *Judgment*, Notwithstanding verdict, Correc-
tion of judgment.

The finality of a judgment for purposes of appeal was not affected by the
conditional allowance of a motion for a new trial. [655-656]
In an eminent domain proceeding the judge did not abuse his discretion in
reserving his decision whether to admit evidence of value based on a
reasonable prospect of a zoning change by admitting such evidence
during trial, then submitting special questions to the jury and entering
judgment notwithstanding the verdicts. [656]
In an eminent domain proceeding the judge did not abuse his discretion in
concluding that there was no reasonable prospect that zoning restric-
tions against the use of certain premises for multi-family purposes
would be lifted. [656-657]
Under Mass. R. Civ. P. 59 (a), a judge has discretion to order a remittitur
to bring the verdict anywhere within the range of verdicts supported
by the evidence and is not limited to reducing the verdict to the highest
amount which the jury could warrantably have found. [658-662]

PETITION filed in the Superior Court on August 16, 1973.
The case was heard by *John P. Sullivan*, J.
The Supreme Judicial Court granted a request for direct
appellate review.
*Eugene G. Panarese (David J. Fine* with him) for the
plaintiffs.

[1] The plaintiffs are Frank P. D'Annolfo, William F. D'Annolfo, and
Samuel Zaitz, trustees of Ton-Jill Trust.

*William D. Barry (David J. Barry, III*, with him) for the defendant.

WILKINS, J. On April 18, 1972, the Stoneham Housing Authority (authority) took from the plaintiffs approximately four acres of vacant land (premises) for a housing project. The plaintiffs commenced this action to recover damages for the taking. The premises are in a single residence zoning district in which multi-family residential uses are forbidden, except that, pursuant to a July 6, 1971, zoning amendment, the Stoneham board of appeals may grant a special exception for an "elderly housing project."

Before any testimony was introduced, counsel advised the judge that the plaintiffs intended to offer evidence concerning the prospect of a zoning change applicable to the premises and that the plaintiffs' expert was intending to give an opinion of the value of the premises based on his belief that there was a reasonable prospect that zoning restrictions against the use of the premises for multi-family purposes could be lifted. The judge asked for an offer of proof. The plaintiffs indicated that their evidence would show that, even before the taking, the authority had obtained a special permit to construct housing for the elderly on the premises; that the authority had other projects in the vicinity of the premises; that the town had changed the zoning of certain areas to permit multi-family uses; and that, as stated earlier, their expert would testify that there was a reasonable prospect of a relevant zoning change.

The judge considered our opinion in *Skyline Homes, Inc.* v. *Commonwealth*, 362 Mass. 684 (1972), where we noted various circumstances in which a reasonable prospect of a zoning change might be found. He recognized that he had a measure of discretion to admit or to exclude evidence of value based on a reasonable prospect of a zoning change. He noted also that there was no indication that a town board or committee had recommended a change of zoning for the premises, that there had been no rezoning in the vicinity of the premises which would help a private landowner, and that there was no indication of a change in the character of

the surrounding area. Counsel for the authority presented examples of proposed zoning changes on which the town meeting had not acted favorably. He pointed out that in March, 1973, the town meeting had voted, 202 to 14, to amend the zoning by-law to impose a moratorium until June 30, 1975, on the construction of apartment houses in the town. He stressed the fact that, with the exception of one parcel surrounded by less restrictive zoning, from 1966 to the time of trial (April, 1976), the town had not acted favorably on any proposal to change land from a single family to a multiple dwelling district.

The judge concluded that, if he were the trier of fact, he would not find a reasonable prospect of a lifting of the zoning restriction. However, he decided to let the trial proceed, prepared to rule on the admissibility of evidence concerning the prospects of a zoning change as the trial progressed.

At the beginning of the second day of testimony, the judge decided, on his own motion, to admit all evidence bearing either way on the likelihood of a zoning change, and to submit three special questions to the jury under Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974). These questions would ask the jury (1) to give the fair market value of the premises under then existing zoning; (2) to decide whether on the date of the taking there was a reasonable prospect of a zoning change; and (3) if there were such a prospect, to find the fair market value of the premises. He did this to avoid the necessity of a new trial, if an appellate court should determine that it was error to disregard the plaintiffs' evidence of value based on a reasonable prospect of a zoning change. The judge made it clear that he would probably decline to enter a judgment based on an affirmative answer to the second question. The judge indicated that he intended to reserve his power ultimately to exercise his discretion to exclude evidence of the prospects of a zoning change from proper consideration, until after the questions were answered. The trial continued accordingly.

The plaintiffs' expert testified to a value of the premises of $100,000, giving recognition to a reasonable probability of a

zoning change. He also testified that the fair market value of the premises was $61,500, under the zoning restrictions in effect at the time of the taking. One of the plaintiffs gave $120,000 as his opinion of the value of the premises on the date of the taking. The authority's expert testified to a value of $25,000. He indicated that there was no chance of a zoning change, but agreed that qualified appraisers might disagree.

At the close of the evidence, the judge made a finding, and indicated that he would file a memorandum (as he did), that in his discretion the plaintiffs had not shown a reasonable prospect of a zoning change. Nonetheless, he denied the authority's motion for a directed verdict on question two, and rejected the plaintiffs' argument that no special questions should be asked.

The judge submitted three questions to the jury.[2] The jury answered that (1) under existing zoning the fair market value of the premises was $65,000 on the date of the taking; (2) there was a reasonable prospect that the premises could be used lawfully for multi-unit housing; and (3) thus, the fair market value of the premises was $99,000 on the date of the taking.

Judgment was not entered immediately on the jury's verdict. Two days after the verdict, the judge filed his supporting memorandum and ordered that judgment be entered in the amount of $65,000, plus interests and costs.[3]

---

[2] These questions were:

"1. What was the fair market value of the subject parcel under existing zoning (Residence 'A') as of April 18, 1972?

"2. Do you find that there was a reasonable prospect that the subject parcel could be lawfully used for multi-unit housing either by the plaintiff or by a successor in title to the plaintiff?

"3. Assuming the answer to question #2 is 'Yes,' what would be your opinion of the fair market value of the subject parcel as of April 18, 1972?"

[3] The plaintiffs note that Mass. R. Civ. P. 58 (a) (2), 365 Mass. 826 (1974), requires a judge to approve the form of the judgment "promptly" on return of a special verdict under rule 49 (a), but concede that the judge's failure to order entry of judgment for $99,000 was mitigated here because the authority filed a timely motion for judgment notwithstanding the verdict which the judge granted.

On May 4, 1976, and within ten days of the jury's verdict, the authority filed a motion for judgment notwithstanding the verdict, asking that the judge set aside the answers to questions two and three and instead that a negative answer be given to question two and that question three not be answered. The authority also moved for a new trial on grounds, among others, that the verdict was excessive and against the weight of the evidence. The judge heard the parties on May 18, 1976, treating the motion for a new trial as directed at least to the verdict of $65,000. He said neither the $65,000 figure nor the $99,000 figure made sense to him and that the verdict of $65,000 struck him as preposterous. He indicated that he would allow the motion for judgment notwithstanding the verdict as to questions two and three and would take some action with respect to a new trial. On June 4, 1976, he allowed the motion for judgment notwithstanding the verdict on questions two and three, and, without stating any grounds, allowed the motion for a new trial. For some reason, a record of these actions was not docketed until November 12, 1976.

Counsel for the authority then wrote to the judge asking whether he had intended to order a remittitur.[4] On December 7, 1976, without hearing, the judge added the following to the order allowing the authority's motion for judgment notwithstanding the verdict: "[J]udgment will remain for the plaintiff. However, answers to questions #2 and #3 of the Special verdict are to be changed #2 to the negative and #3 not to be answered since the jury's response was against the weight of the evidence." He revoked the June 4 order allowing the motion for a new trial, and entered an order stating that the $65,000 verdict was excessive by $27,000, and granting a new trial unless, within ten days, the plaintiffs remitted $27,000, leaving a verdict of $38,000. The plaintiffs elected not to remit any portion of the verdict. We granted direct appellate review.

---

[4] A notation in handwriting on the bottom of the motion for a new trial stated the word "remittitur" but no order concerning a remittitur had been entered.

1. We turn our attention first to the plaintiffs' challenge to the judge's action in entering judgment notwithstanding the $99,000 verdict.

The appeal from the entry of judgment notwithstanding the verdict may be considered at this time despite the order for a new trial.[5] The authority had moved for a directed verdict on question two. That motion was denied, and the authority moved seasonably under Mass. R. Civ. P. 50 (b) that the verdict be set aside and judgment be entered in accordance with its motion for a directed verdict. It moved also for a new trial, as was its right. Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). The plaintiffs acknowledge that the authority moved for a new trial on questions two and three. The judge conditionally allowed the authority's motion for a new trial as to the $99,000 verdict, such a trial to take place only if he were wrong in not entering judgment on that verdict. See Mass. R. Civ. P. 50 (c) (1), 365 Mass. 814 (1974). The finality of a judgment is not affected by a conditional allowance of a motion for a new trial. *Id.* 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2540, at 618 (1971). See 5A Moore's Federal Practice par. 50.13[1], at 50-117, 50-118 (2d ed. 1977). Therefore, an appeal is now appropriate as to the determination not to per-

---

[5] We reject the plaintiffs' claim that we should treat the authority's motion for judgment notwithstanding the verdict as a nullity. They argue that the authority's motion for a directed verdict on question two failed to state any specific supporting ground, as Mass. R. Civ. P. 50 (a), 365 Mass. 814 (1974), requires. After the verdict, the plaintiffs moved to strike both that motion and the authority's motion for judgment notwithstanding the verdict, which, under Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974), is predicated on the existence of a motion for a directed verdict. Although the judge might have denied the motion for a directed verdict on question two because that motion failed to state any specific grounds therefor, he was not required to do so. The purpose of the motion was obvious to all, and it was consistent with the plan proposed by the judge. At the time the motion was presented, the plaintiffs did not object to it on the ground of lack of specificity, and the point was thereby waived. *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974, 975 (1976). However, a motion for a directed verdict should state specific grounds therefor in order both to guard against its denial for lack of specificity and to preserve the right to move for a judgment notwithstanding the verdict.

mit the plaintiffs to recover on the verdict of $99,000.[6] We turn then to the propriety of allowing the motion for judgment notwithstanding the verdict of $99,000.

We have recognized that a trial judge has a range of discretion in land damage cases in admitting evidence of value based on a use of the land which requires a zoning change or other preliminary municipal authorization. An opinion of value founded on such a use has been held properly admissible where, "upon all the evidence in the case, the jury could warrantably find that a willing buyer's evaluation of the land could be influenced by the possibility of a change in zoning." *Lee* v. *Commonwealth*, 361 Mass. 864, 865 (1972). *Wenton* v. *Commonwealth*, 335 Mass. 78, 83 (1956) (evidence of potential use of premises for a gasoline station, requiring a municipal license, held admissible in the judge's discretion). However, the judge must make a threshold determination that there is sufficient evidence of a reasonable probability of a change in existing restrictions to warrant submitting the question to the jury. *Colonial Acres, Inc.* v. *North Reading*, 3 Mass. App. Ct. 384, 387 (1975). On this point, "the judge has a margin of ultimate discretion in deciding whether the proof has gone far enough to warrant submission of the issue to the jury." *Skyline Homes, Inc.* v. *Commonwealth*, 362 Mass. 684, 687 (1972).

The plaintiffs' argument concerning the judge's treatment of the possible rezoning of the premises does not acknowledge this range of discretion. The issue here is not whether there was evidence of the possibility of a zoning change which would have justified a decision to admit that evidence and opinions of value based on it, but rather whether the evidence of a possible change in zoning was such that it would have been an abuse of discretion to exclude it. There is no reason why the judge could not reserve

---

[6] The question of the propriety of the entry of judgment notwithstanding the verdict would be appealable now even if we were to accept the plaintiffs' argument that the action on the motion for a new trial was a nullity.

his decision, including his exercise of discretion, as he did here, by the use of special verdicts.

The judge did not abuse his discretion in declining to let the $99,000 verdict stand. The zoning bar could have been removed only by at least a two-thirds vote of a Stoneham town meeting. G. L. c. 40A, § 7, inserted by St. 1954, c. 368, § 2. Within a year after the taking, a town meeting voted overwhelmingly to forbid the construction of apartments for a period of two years. This fact strongly supports the conclusion that on the date of the taking there was no reasonable prospect of a favorable zoning change as to the premises in the near future. In addition, the town's pattern of denials of, or inaction on, zoning petitions indicated a negative prospect for a zoning change. The fact that the authority, a public entity under public control, had obtained a zoning change for housing for the elderly did not indicate that a private developer could have obtained a zoning change from a single residence to a multi-family district. Of course, once the prospect of a zoning change was removed from the case, the judge's entry of a judgment for the defendant on questions two and three followed logically.

We comment finally on the judge's statement in the December 7, 1976, order that the jury's response to question two "was against the weight of the evidence." The standard to be used on a motion for judgment notwithstanding the verdict is the same as that on a motion for a directed verdict (J.W. Smith & H.B. Zobel, Rules Practice § 50.13, at 209 [1977]), that is, Does the evidence, construed against the moving party, justify a verdict against him? *Id.* at § 50.16. *Alholm* v. *Wareham*, 371 Mass. 621, 627 (1976). *Chase* v. *Roy*, 363 Mass. 402, 403-404 (1973). See 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2537, at 599 (1971). The weight of the evidence standard is not involved. 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2539, at 608 (1971). See *Stewart* v. *Roy Bros.*, 358 Mass. 446, 448 (1970). In all the circumstances, the judge's decision to allow the motion for judgment notwithstanding

the special verdict was proper.[7] His purpose concerning questions two and three was clear throughout the trial and after the trial up to this point. The mention of the "weight of the evidence" can fairly be read as a reference to the weight of the evidence concerning the prospects of a zoning change, a matter on which the judge could weigh the evidence, exercise his discretion (as he did), and decide to exclude the evidence. There is no reasonable basis for concluding that the judge granted the authority's motion for a judgment nothwithstanding the verdict by applying an incorrect standard.

2. We consider then the plaintiffs' argument that they are entitled to a judgment of $65,000, assuming, as we have decided, that the judge properly allowed the authority's motion for judgment notwithstanding the verdict on the second special question. Much of this argument rests on the assumption that the authority's motion for a new trial was directed solely to the $99,000 verdict. Because we disagree with this conclusion, we need not consider issues arising from it. We regard the motion for a new trial as directed to the $65,000 verdict because (a) the motion is general in terms, (b) the judge and the parties made no significant distinction among the special verdicts at the hearing on the motion, and (c) in light of the judge's indicated intention to reject any affirmative answer to question two, the $65,000 verdict was the one logically expected to be addressed in the motion.

The judge allowed the motion for a new trial on June 4, 1976, after entering judgment notwithstanding the verdict on questions two and three. He must have intended to allow a new trial on the case considered as if there were no reasonable prospect for rezoning. Unfortunately, he did not speci-

---

[7] We assume that the judge had authority to act on this motion as late as December 7, 1976. Of course, if the judge was powerless to act on December 7, 1976, the plaintiffs are left with his June 4, 1976, allowance of the motion for judgment notwithstanding the verdict, and there is no indication that the judge applied an improper standard then in deciding to allow that motion.

fy the reasons for granting the new trial, as Mass. R. Civ. P. 50 (c) (1) requires. The grounds urged in the motion for a new trial included claims that the verdict was against the weight of the evidence and that the verdict was excessive. Ordinarily, if a judge has allowed a motion for a new trial on the ground that the verdict was against the weight of the evidence, we would consider any appeal only in terms of whether he abused his discretion in entering such an order. See *Fialkow* v. *DeVoe Motors, Inc.*, 359 Mass. 569, 576-577 (1971). If, however, a judge allows a motion for a new trial solely because the verdict was excessive, Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974), prohibits granting a new trial "until the prevailing party has first been given an opportunity to remit so much thereof as the court adjudges is excessive." The June 4, 1976, order failed to extend this right to the plaintiffs. When the possibility of such an omission was brought to the judge's attention, he corrected it by the order docketed on December 7, 1976, granting a new trial unless $27,000 of the $65,000 verdict were remitted.

Rule 60 (a) of the Massachusetts Rules of Civil Procedure, 365 Mass. 730 (1974), allows the court to correct clerical errors in orders where the error arises from oversight or omission. J.W. Smith & H.B. Zobel, Rules Practice § 60.2, at 469-470 (1977). The record indicates that an order concerning a remittitur was intended to be entered but was not. We thus treat the remittitur order as properly entered. Although the December 7, 1976, order vacated the June, 1976, new trial order, the substantive effect was to correct the earlier order to make it reflect the judge's original intention to afford the plaintiffs the right to accept a remittitur.

We face the question whether we should now review the plaintiffs' challenge to the remittitur order. Before the adoption of our rules of civil procedure, the allowance of a motion for a new trial was interlocutory and not ripe for appellate review until completion of the second trial. *Oxley* v. *Water Supply Dist. of Acton*, 2 Mass. App. Ct. 842, 842-843 (1974), and cases cited. See *Haufler* v. *Commonwealth*, 372 Mass. 527, 531 (1977); J.W. Smith & H.B. Zobel, Rules Prac-

tice § 59.4 at 444 (1977).[8] The same practice obtains in the Federal courts. 11 C.A. Wright & A.R. Miller, Federal Practice § 2818 (1973).

This case presents, however, a special circumstance. Normally, where a judgment notwithstanding the verdict is upheld on appeal, the case is ended, and the appellate court need not consider any question concerning a new trial which was ordered in the event the judgment should be reversed. 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2540, at 618 (1971). Here, we affirm a judgment entered in favor of the defendant notwithstanding the verdict, but because that judgment relates to special questions and an issue remains open, the case is not concluded. In these special instances the court has discretion to give immediate consideration of the propriety of the allowance of the motion for a new trial. The appeal is properly here on the issue of the allowance of the motion for judgment notwithstanding the $99,000 verdict, and to put the issue to rest we decide it at this time. Such a conclusion is consistent with the authority given to an appellate court to consider, after reversal of a judgment notwithstanding the verdict, whether a new trial should have been conditionally ordered. Mass. R. Civ. P. 50 (c) (1). See 5A Moore's Federal Practice, par. 50.14 at 50-121 (2d ed. 1977); 9 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2540, at 618, 619 n.11 (1971); J.W. Smith & H.B. Zobel, Rules Practice § 50.18, at 214 (1977).

The plaintiffs argue that the judge abused his discretion in ordering a new trial unless they remitted $27,000 of the $65,000 verdict. They assert that a remittitur may not reduce a jury's verdict below the highest amount which the jury could warrantably have found. They argue that the evidence clearly warranted a verdict of $65,000, pointing out that their expert testified to a value of $61,500 and that

---

[8] "Of course, an order granting a new trial is interlocutory and is not, therefore, immediately reviewable unless combined with an order (subsequently reversed) granting judgment notwithstanding the verdict" (footnotes omitted). *Id.*

we have upheld a judge's refusal to upset a verdict which substantially exceeded the highest opinion of value in evidence. *Loschi* v. *Massachusetts Port Auth.*, 361 Mass. 714 (1972).

Perhaps, under Federal procedure, the preferable standard for determining the propriety of the amount of a remittitur is whether the verdict was reduced to the highest amount that the jury could properly have awarded. See 11 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2815, at 104-105 (1973). But see 6A Moore's Federal Practice par. 59.05[3], at 59-58 (2d ed. 1974). Rule 59 of the Federal Rules of Civil Procedure does not refer to remittiturs. Our rule 59 does, and requires a remittitur order when a new trial is granted solely on the ground of excessive damages. Mass. R. Civ. P. 59 (a). The reduction is stated to be so much of the damages "as the court adjudges is excessive." *Id.* This special Massachusetts provision incorporates the remittitur language of G. L. c. 231, § 127, which was repealed (St. 1975, c. 377, § 109) after the adoption of our rules of civil procedure. See J.W. Smith & H.B. Zobel, Rules Practice § 59.4, at 445 (1977). The cases under G. L. c. 231, § 127, are generally applicable to remittiturs ordered under our rule 59. *Id.* See *Carzis* v. *Hassey*, 6 Mass. App. Ct.     ,     (1978).[a]

A judge's authority in this Commonwealth concerning remittiturs may be broader than that of a Federal judge. Our rule 59 (a) does not require the judge to give the plaintiff the opportunity to remit only so much of the amount of the verdict as exceeds the maximum amount which the jury warrantably might have allowed. It requires that the plaintiff be given an opportunity to remit so much of the damages awarded as "the court adjudges is excessive." Chapter 231, § 127, as amended through St. 1967, c. 139, used the same language. Our decisions under G. L. c. 231, § 127, thus did not follow the restrictive standard contended for by the plaintiffs but rather gave the trial judge greater discretion.

---

[a] 371 N.E.2d 1375, 1378 (1978).

See, e.g., *Raunela* v. *Hertz Corp.*, 361 Mass. 341, 346 (1972). In the *Raunela* case, while discussing the verdict on a count for wrongful death, we said that "[t]he determination of the amount of remittitur was the responsibility of the judge, provided only that the amount of the resulting verdict was within the range of damages permitted by the applicable death statute." *Id.* We thus conclude that a judge has discretion to fix the amount of remittitur to bring the verdict anywhere within the range of verdicts supported by the evidence. By this standard, a verdict of $38,000 was warranted.

We are not unmindful of the fact that there is a constitutional right to a jury determination of damages in a case such as this. A court may not substitute its judgment in the ultimate determination of damages. However, rejection of a remittitur order merely results in a new jury trial. If after a second verdict a judge seeks to reduce a jury verdict by remittitur, constitutional considerations require that he be careful not to usurp the jury's role.

The undesirability of imposing the strict standard which the plaintiffs urge is illustrated in this case. The second trial will focus on the fair market value of the premises for single family residential uses, unvexed by considerations of the prospects of a zoning change. The plaintiffs' case in the first trial was so dominated by the zoning change issue that evidence concerning the fair market value of the premises for single residence uses may well have been obscured. The ends of justice will not be ill-served by a new trial.

3. The judgment on special questions two and three notwithstanding the verdict and the order granting a new trial are affirmed.

*So ordered.*