SERVICE PUBLICATIONS, INC. & another[1] *vs.* WILLIAM
GOVERMAN.

Middlesex. September 9, 1985. — January 17, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Practice, Civil,* Judgment notwithstanding verdict, Verdict, Failure to make
objection, New trial, Jury trial, Consumer protection case, Findings by
judge. *Contract,* Performance and breach, Damages. *Damages,* Breach
of contract, Remittitur, Additur. *Consumer Protection Act,* Wilful or
knowing violation, Unfair act or practice, Jury trial, Employment,
Exemption from liability.

In a contract action in which the jury returned a general verdict for the plain-
tiff awarding it nominal damages and, on the defendant's counterclaim
alleging breach of contract by the plaintiff, returned a general verdict
for the defendant awarding him substantial damages, the judge erred in
allowing the plaintiff's motion for judgment on the counterclaim not-
withstanding the verdict based on the ground that the defendant's breach
of contract barred him from recovering for the plaintiff's breach, where
there was nothing in the record from which it could be determined that
the jury had found the defendant's breach to have been either wilful or
material. [571-573]
On appeal from an order in a contract action allowing the plaintiff's motion
for judgment notwithstanding the verdict on the defendant's counterclaim
and, in the event the allowance of the motion was reversed, allowing
the plaintiff a new trial on the issue of damages if the defendant refused
to accept a remittitur of $160,000, this court affirmed so much of the
order as granted the remittitur or, in the alternative, a new trial on the
issue of damages. [574-577]
At the trial of an action raising claims for breach of contract and claims under
G. L. c. 93A, there was no error, in the circumstances, in the judge's
submission of the consumer protection claims to the jury. [577-578]
The fact that the jury at the trial of an action raising claims for breach of con-
tract and violation of the Consumer Protection Act found for the defendant
on a count for deceit did not preclude the judge from finding that the
defendant had committed an unfair act or practice and awarding double
damages pursuant to G. L. c. 93A, § 11. [578-579]

[1] American Magazine Service Company, Inc.

In a consumer protection case arising from transactions relating to the sale
of the defendant's business to the plaintiff and the subsequent employ-
ment of the defendant by the plaintiff, the judge was warranted in
concluding that the acts complained of occurred prior to any employment
agreement between the parties and were therefore not exempt from G. L.
c. 93A, as acts occurring during an employment relationship. [579]

Although certain statements of fact made in an appellate brief were argumen-
tative in nature and were not substantiated by the record as required by
Mass. R. App. P. 16 (e), this court refused the opposing party's request
to strike the entire brief, but instead disregarded those inappropriate
portions. [580]

In an action raising claims for breach of contract and for violations of G. L.
c. 93A, in which the jury awarded the plaintiff nominal damages on a
count for breach of contract and $15,000 on a count for violations of
G. L. c. 93A, the judge did not abuse his discretion in denying the
plaintiff's request for an additur to the jury's awards. [580-581]

CIVIL ACTION commenced in the Superior Court Department
on July 15, 1980.

The case was tried before *Thomas R. Morse, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Leslie H. Rudnick* for the defendant.

*Charles Mark Furcolo* (*Alan K. Posner* with him) for the
plaintiffs.

NOLAN, J. For approximately twenty-five years prior to
1978, William Goverman operated, quite successfully, a
magazine subscription business, American Magazine Service
Company (AMSC), which evolved into a sole proprietorship.
AMSC solicited subscriptions nationwide to two magazines
published by the plaintiff Service Publications, Inc. (SPI), for
the beauty salon and barbershop industry. This activity was
conducted within the "trade division" of AMSC. The "con-
sumer division" of AMSC solicited subscriptions to nationally
distributed magazines such as Time, Life, Newsweek and many
more.

For many months from September of 1978, Goverman and
representatives of SPI carried on negotiations for the sale of
AMSC. SPI charged that during these negotiations Goverman
misrepresented the pre-tax profit of his business and the number

of sales persons on his force. Additionally, SPI alleges, Goverman failed to provide to SPI, upon request, accounting statements and tax returns for the business. Documents expressing the understanding of both Goverman and SPI to terms of an agreement of sale were exchanged. The year 1979 found the parties operating under a new agreement far more favorable to SPI and more onerous to AMSC than any earlier agreement. Finally, Goverman decided to sell and he became an employee of SPI after selling both his "trade division" and "consumer division" to SPI.

Goverman's authority to run the business was severely restricted and troubles arose almost immediately between Goverman and SPI. Sales in the "trade division" dropped dramatically and a resultant reduction in income to SPI followed. Charges and counter charges were hurled between the parties. In particular, SPI charged Goverman with selling magazine subscriptions to students in violation of SPI's policy against such practices because of the negative effect that student subscriptions had on the magazines' advertising potential. SPI also claimed that Goverman was providing consulting services to a potentially competing magazine, "Trend," although that magazine was never published and eventually filed for bankruptcy. Additionally, Goverman was charged with selling "advance subscriptions" or renewals in advance of the expiration date of the existing subscriptions, in violation of an agreement between the parties. Goverman, on the other hand, complained that SPI failed to pay commissions on time and that, as a result of such practices, Goverman lost subscriptions and valuable sales agents. Because of these troubled waters, SPI terminated Goverman's employment on June 11, 1980.

SPI commenced an action on July 15, 1980. SPI's substituted complaint, filed December 3, 1980, contained four counts: breach of contract (Count I); deceit (Count II); violation of G. L. c. 93A (Count III); and usurpation of a corporate opportunity (Count IV). SPI amended its substituted complaint to add a count for wrongful interference with contractual relations. This count was later voluntarily dismissed.

Goverman responded with an answer raising certain defenses (the material ones will be treated in this opinion) and a counterclaim in four counts: breach of contract against SPI[2]; injunctive relief; violations of G. L. c. 93A against SPI; and intentional infliction of emotional distress.[3] The claim for injunctive relief was not acted upon because of a stipulation of the parties and the claim for intentional infliction of emotional distress was dismissed prior to trial. Goverman filed a motion for "partial summary judgment" on Counts I, II, and III of the complaint of SPI. It was denied.

After two and one-half weeks of trial, the jury returned a verdict for SPI on its breach of contract count and awarded it nominal damages ($1.00). The jury found for SPI on the G. L. c. 93A claim in the amount of $15,000, and found for Goverman on the counts for deceit and usurpation of a corporate opportunity.

As to Goverman's counterclaims, the jury found for Goverman for breach of contract in the amount of $465,000. The jury found for SPI on Goverman's c. 93A claim. Numerous posttrial motions were filed by the parties. The trial judge allowed SPI's motion for judgment notwithstanding the verdict with respect to Goverman's verdict for breach of contract. The judge reserved his decision on SPI's motion for new trial, pending appellate review of the judgment notwithstanding the verdict. In the alternative, he ordered a remittitur on Goverman's verdict for breach of contract, in the amount of $160,000 conditional upon Goverman's acceptance of it within twenty days. In the event that Goverman rejected the remittitur, SPI would be entitled to a new trial on the issue of damages. The

[2] After the purchase of AMSC by SPI, the business became a wholly owned subsidiary of SPI operated as American Magazine Service Company, Inc. Hereinafter, SPI refers to both entities.

[3] At a pretrial conference on February 3, 1983, the judge denied without prejudice Goverman's motion to file a substituted counterclaim since the motion was filed on the eve of trial. Goverman sought to add two counts to his original counterclaim. One was for breach of a separate lease agreement and the other for wrongful interference with contractual relations. He also sought to break down the original breach of contract and c. 93A counterclaims against each plaintiff individually.

remittitur was also contingent upon our decision with respect to the judgment notwithstanding the verdict.

The judge awarded double damages and attorneys' fees on SPI's c. 93A claim. He denied SPI's motion for additurs on the breach of contract and c. 93A verdicts. Both parties have appealed the judge's rulings. We transferred the case to this court on our own motion. We shall identify the issues as we raise and decide them.

1. *Judgment notwithstanding the verdict.* At the close of SPI's evidence and again at the close of all the evidence, Goverman moved unsuccessfully for a directed verdict. SPI also moved without success for a directed verdict on Goverman's counterclaim. After the jury returned a verdict of $465,000 for Goverman on his counterclaim for breach of contract, SPI moved for judgment notwithstanding the verdict, or in the alternative for a new trial, pursuant to Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). The judge allowed the motion for judgment notwithstanding the verdict,[4] and reserved his decision on the motion for a new trial pending appellate review of the judgment notwithstanding the verdict.

In reviewing the judge's allowance of the motion for judgment notwithstanding the verdict, we apply the same standard as we would apply for a review of a motion for directed verdict.[5] *D'Annolfo* v. *Stoneham Hous. Auth.,* 375 Mass. 650, 657 (1978). That standard is whether "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the [defendant]." *Poirier* v. *Plymouth,* 374 Mass. 206, 212 (1978), quoting *Raunela* v.

---

[4] The judge followed the better procedure which was to deny the motions for directed verdict. See *Abraham* v. *Woburn,* 383 Mass. 724, 727 n.3 (1981). "[I]n a case in which it is a close question whether the standard for granting a directed verdict is met [the better procedure] is to allow the matter to go to the jury. If the judge then decides that the jury's verdict cannot stand, a motion for judgment notwithstanding the verdict may be allowed." *Smith* v. *Ariens Co.,* 375 Mass. 620, 627 (1978).

[5] The filing of a motion for directed verdict is a prerequisite to filing a motion for judgment notwithstanding the verdict. Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974).

*Hertz Corp.*, 361 Mass. 341, 343 (1972). If any valid basis exists for allowing a judgment notwithstanding the verdict, we shall affirm the allowance, even if the judge based his decision on an erroneous principle. *Ezekiel* v. *Jones Motor Co.*, 374 Mass. 382, 390 (1978).

The judge here allowed SPI's motion, adopting SPI's contention that, "[b]ecause the defendant (Goverman) was found to be in breach on Count I of plaintiff's complaint, he cannot recover on his counterclaim for breach of contract," citing *Sipley* v. *Stickney*, 190 Mass. 43, 46 (1906). *Sipley* holds that "a wilful default in the performance of a stipulation not going to the essence of the contract bars a recovery." *Id*. Therefore, we infer that the judge made a ruling that Goverman was in wilful default on the contract, and, as a consequence, is precluded from any recovery. We rule that the judge exceeded his function in making this finding of wilfulness in connection with the contract claim, though, as we say later, the judge properly considered "wilfulness" in connection with the c. 93A claim.

It is clear from the record and from the judge's memorandum and order that any acts of breach committed by Goverman necessarily occurred prior to SPI's breach, which was the termination of Goverman.[6] It is likewise clear from the jury's question to the judge and from the verdicts that were rendered that the jury found Goverman to have committed a breach, but that SPI suffered no damages.[7]

---

[6] The judge misstated in his memorandum, "I agree, on the evidence, with the argument that any breach by the plaintiff necessarily occurred before June 11, 1980, which is the date Service terminated Goverman." We think that the judge intended to say "any breach by the defendant" since the evidence in this case dictates that result.

[7] The jury asked the following question: "Can the jury find that one party has breached the contract and also determine that there are *no damages* to the other party resulting from the breach of contract?" (Emphasis in original.) The judge, after consulting with counsel, responded, "The short answer to that question is yes. If, however, . . . one party has proved liability and has failed to prove the amount of any damages, the law says the jury should nevertheless award nominal damages for the breach of contract which, for your purposes, would be $1.00 if you found the facts suggested in Question 1."

The law of this Commonwealth precludes recovery by one who wilfully commits a breach of a contract regardless of whether the breach goes to the essence of the contract. *Sipley* v. *Stickney, supra*. There has been some suggestion in the past that one who wilfully commits a breach may possibly recover on the contract if the breach is "de minimis." There is nothing in this case that indicates that the jury considered the breaches of contract by SPI and Goverman to be "de minimis." See *Albre Marble & Tile Co.* v. *Goverman*, 353 Mass. 546, 550 (1968). Despite a proliferation of requests for jury instructions by both SPI and Goverman, not a single request from either party raised the question of wilfulness of breach, materiality of breach, de minimis breach or recovery on the contract in quantum meruit. Because we do not know whether the jury found or would have found that Goverman had committed a wilful and a material breach, the verdicts could have been inconsistent.[8] This issue should have been raised before the jury were discharged and when there was time to correct the verdicts. See *Uloth* v. *City Tank Corp.*, 376 Mass. 874, 884 (1978); *McCue* v. *Prudential Ins. Co. of Am.*, 371 Mass. 659, 663 (1976) (referring to inconsistencies between special questions and general verdicts). The result is that SPI waived any rights to argue the issue of inconsistent verdicts, and the verdicts should stand as the jury rendered them. Furthermore, after examining the record with care, we are satisfied that there was sufficient evidence to warrant a verdict for Goverman. Accordingly, we reverse the judge's allowance of SPI's motion for judgment notwithstanding the verdict.

---

[8] To constitute inconsistent verdicts, it must be shown that the verdicts are based on inconsistent findings of fact. See *Roundy* v. *Stewart*, 140 Ariz. App. 201, 203 (1984). Here, it is not clear whether the verdicts were based on inconsistent findings of fact because special questions were not submitted to the jury. In fact, when the jury asked whether it could find that both parties had committed a breach, the judge, with the assent of counsel, answered the question in the affirmative. Thereafter, the jury found that both SPI and Goverman had committed a breach. Moreover, the parties did not submit requests for instructions nor object to the lack of instruction with respect to the issue of wilfulness or materiality.

2. *New trial and remittitur.* The judge ruled in his memorandum that "Service's motion for judgment [notwithstanding the verdict] as to Count I of Goverman's substitute counterclaim is [a]llowed. Should an appellate court rule that I am in error, I will act on Service's motion for new trial as to Count I which motion is hereby reserved both as to liability and damages." He further stated that "I will allow a remittitur in the amount of $160,000. If that is not accepted within twenty days by Goverman, Service may have a new trial on the issue of damages on Goverman's counterclaim for breach of contract." What the judge essentially did was to reserve his ruling on a motion for a new trial for both liability and damages on Count I of Goverman's counterclaim[9], and he also granted SPI a new trial on damages only on the same count of the counterclaim in the event that we reverse the judge's allowance of the motion for judgment notwithstanding the verdict and in the event that Goverman rejects the remittitur. We address each of the judge's rulings separately.

As to the motion for a new trial[10] on Count I of Goverman's counterclaim, we rule that the judge should have made a ruling on the motion at the time he granted the judgment notwithstanding the verdict. Massachusetts R. Civ. P. 50 (b), 365 Mass. 814 (1974), provides that "[a] motion for a new trial may be joined with [a motion for judgment notwithstanding the verdict), or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct

---

[9] We reject Goverman's contention that the judge was referring to Count I of SPI's complaint when he reserved his ruling on the motion for a new trial. It is clear from SPI's motion and from the judge's order that it was a motion for a new trial on Goverman's counterclaim for breach of contract, not on its own claim for breach of contract.

[10] SPI set forth the following grounds in its motion for new trial: 1. The verdict is contrary to law; 2. The verdict is contrary to the evidence; 3. The verdict is contrary to the law and the evidence; 4. The verdict is contrary to the weight of the evidence; 5. There is not sufficient or substantial evidence to support the amount of the jury's verdict; 6. The verdict is excessive and has no basis in the evidence or in law; 7. The verdict resulted from jury prejudice or sympathy; 8. The verdicts are inconsistent in fact and law.

the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial." Furthermore, ". . . [i]f the motion for judgment notwithstanding the verdict . . . is granted, the court *shall* also rule on the motion for a new trial, [as in the present case], if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial" (emphasis supplied). Mass. R. Civ. P. 50 (c) (1), 365 Mass. 815 (1974). To state it more simply, "[a] losing [party], arguing that [his opponent's] evidence was insufficient as a matter of law to support the verdict, may simultaneously ask the court, if it disagrees, to conclude nevertheless that the verdict was against the weight of the evidence and that [he] should have a new trial." J.W. Smith & H.B. Zobel, Rules Practice § 50.17 (1977). "Even if the court decides to enter judgment n.o.v., it *should also rule* on the new-trial alternative" (emphasis added). The conditional grant of the new trial does not affect the finality of the judgment n.o.v.; it merely avoids (in most instances) the need for remand should the appellate court reverse the judgment." *Id.*

The judge in the case at bar failed to make a ruling on the motion for a new trial. We are not required to remand to the judge to decide on the alternative motion for a new trial where the parties failed to insist on a ruling in the first instance. See 5A Moore's Federal Practice par. 50.14 n.10, at 50-105 (2d ed. 1985), citing *Mays* v. *Pioneer Lumber Corp.*, 502 F.2d 106 (4th Cir. 1974), cert. denied, 420 U.S. 927 (1975). SPI did not object when the judge reserved his ruling on the motion for a new trial, and therefore should not be allowed to complain that the judge failed to do that which is commanded under Mass. R. Civ. P. 50 (c). See *Vera Cruz* v. *Chesapeake & Ohio R.R.*, 312 F.2d 330, 332 (7th Cir.), cert. denied, 375 U.S. 813 (1963). *Mays* v. *Pioneer Lumber Corp.*, *supra* at 110 (pointing out that the rule is silent as to the effect of the failure of the judge to follow the rule). Cf. *Montgomery Ward & Co.* v. *Duncan,* 311 U.S. 243 (1940) (parties repeatedly

attempted to obtain a ruling on the motion for a new trial). But see *Kendrick* v. *Illinois Cent. Gulf R.R.,* 669 F.2d 341 (5th Cir. 1982) (court exercised its discretion in sending the case back on the basis that the instructions were incomplete and, therefore, a new trial was warranted). But see *Gordon Mailloux Enter.* v. *Firemen's Ins. Co.,* 366 F.2d 740 (9th Cir. 1966). Moreover, our powers are broad and because we may reverse the grant of a new trial and order entry of judgment on the verdict it follows that we have the power to rule in the first instance that a new trial in this case is not warranted. See 5A Moore's Federal Practice par. 50.14 n.10, at 50-105 (2d ed. 1985), citing *Mays* v. *Pioneer Lumber Corp., supra.* "It is getting things a bit backwards to exposit the rule to mean that the granting of a new trial may be reviewed and reversed but that the failure to either grant or deny a new trial compels remand to allow the . . . judge, in his unappealable discretion, to grant or deny yet another trial." 5A Moore's Federal Practice, *supra.*

We further note that the judge's rulings are somewhat inconsistent and confusing. His second ruling states that he granted SPI a new trial as to *damages only* if Goverman rejects the remittitur. "'It is only when the reason for setting aside the verdict relates solely to damages, disassociated from every other contributing, related or vitiating cause,' that the new trial should treat only damages." J.W. Smith & H.B. Zobel, *supra* at § 59.4, quoting *Waucantuck Mills* v. *Magee Carpet Co.,* 225 Mass. 31, 33 (1916).

In one part of his memorandum and order, the judge appears to be saying that the verdict was only defective because the amount of damages was excessive, but this result appears contrary to his allowance of the judgment notwithstanding the verdict as well as to his reserved ruling on the motion for new trial on the issue of liability and damages. Likewise, the ordering of the remittitur appears to run contrary to the judgment notwithstanding the verdict where the judge questioned the evidence that supported the verdict and did not merely question the excessiveness of the damages. We find it necessary to divine the judge's thinking (although we do so gingerly) in order

to determine the meaning of his rulings. We think that the judge intended to say that not only was the evidence on the issue of liability insufficient to support a verdict for Goverman but also that the damages were excessive. If an appellate court reverses this decision to allow the judgment notwithstanding the verdict, then, at the least, (he seems to intend) the damages should be reduced, or in the alternative, a new trial should be ordered on the issue of damages.

We therefore rule as follows. The judgment notwithstanding the verdict is reversed for reasons stated earlier. Goverman is then "given an opportunity to remit so much thereof [of the verdict] as the court adjudges is excessive." Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974). *D'Annolfo* v. *Stoneham Hous. Auth.,* 375 Mass. 650, 661 (1978). In this case that amount is $160,000. If Goverman does not accept a verdict in the amount of $305,000,[11] which the court has deemed an appropriate award, then SPI is entitled to a new trial on the issue of damages only. *Id.* at 662. Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974).

3. *Chapter 93A claim.* Goverman contends that the judge erred in submitting the c. 93A claims to the jury. We disagree. The case of *Nei* v. *Burley,* 388 Mass. 307, 315 (1983), decided eight days after the conclusion of the trial of the present case, held, inter alia, that there is no *right* to a jury trial for claims arising out of G. L. c. 93A. See *Spring* v. *Geriatric Auth. of Holyoke,* 394 Mass. 274, 289 & n.14 (1985). The rule does not suggest that a judge is prohibited from submitting such a

---

[11] "[A] judge has discretion to fix the amount of remittitur to bring the verdict anywhere within the range of verdicts supported by the evidence." *D'Annolfo, supra* at 661-662. The judge reduced the verdict by $160,000 to $305,000 because Goverman failed to mitigate his damages for over two years. Goverman testified that he had been unemployed since the date of his termination from SPI in June, 1980. We rule that the verdict of $305,000 falls within the range of verdicts supported by the evidence in light of the evidence presented that Goverman failed to mitigate his damages. We find no abuse of discretion here. We also reject SPI's contention that the remittitur was to take effect at the date of the judge's decision and because Goverman failed to accept it within twenty days then SPI is automatically entitled to a new trial on damages as well as on liability. We rule that the twenty-day period commences at the date of rescript.

case to the jury, or that it is reversible error if he does so.[12] In fact, the judge, here, adopted the jury's findings in his memorandum of decision and made an independent determination as to damages. Based on his determination that Goverman acted "wilfully" or "knowingly,"[13] the judge awarded double damages to SPI pursuant to G. L. c. 93A, § 11, as amended through St. 1979, c. 72, § 2, and also awarded attorney's fees. Goverman also challenges the verdict on SPI's c. 93A claim in light of the jury's finding for Goverman on SPI's count for deceit. Further, Goverman asserts that the acts complained of arose during an employment relationship between Goverman and SPI and constituted a single, private transaction, and that therefore G. L. c. 93A is inapplicable. We disagree with all three contentions.

General Laws c. 93A, § 2 (*a*) (1984 ed.), declares that "unfair *or* deceptive acts or practices [that occur] in the conduct of any trade or commerce" are unlawful (emphasis added). The jury could have found Goverman's business practices to be unfair without being deceptive or fraudulent. Further, the

---

[12] It appears from the record that the parties were led to believe by the trial judge at a pretrial hearing that he would submit the c. 93A claims on special questions, but suggested special questions were never formally submitted to the judge and the judge, without objection, never submitted special questions to the jury. The record also reflects that Goverman failed to object at trial to the actual submission of the claims to the jury. He did, however, object to the judge's failure to instruct with respect to acts occurring during an employment relationship, and with respect to other requirements under c. 93A as suggested by Goverman in his requests for instructions to the judge.

[13] We reject Goverman's contention that the judge erred in awarding double damages because he failed to make a finding of "wilfully" or "knowingly." A judge need not make an *express* finding that a person wilfully or knowingly violated G. L. c. 93A, § 2, as long as the evidence warrants a finding of either. See *Shaw* v. *Rodman Ford Truck Center, Inc.,* 19 Mass. App. Ct. 709, 710-712 (1985). Here, we may infer that the trial judge made a determination that Goverman acted "wilfully" or "knowingly" because the judge awarded double damages on SPI's c. 93A claim. His findings will not be disturbed unless "clearly erroneous." See *Bachman* v. *Parkin,* 19 Mass. App. Ct. 909 (1985). We think that the evidence in this case with respect to Goverman's business practices during negotiations for the sale of his business warrants the judge's finding.

judge made a determination that the acts complained of occurred prior to any employment agreement that was entered by the parties and during the ordinary course of business. It was not error for the judge to decide these issues for reasons stated earlier in this opinion. His findings were not "clearly erroneous." See *Bachman* v. *Parkin, supra.*

Finally, Goverman contends that he is exempt from liability under G. L. c. 93A, § 3 (1) (*b*), as amended by St. 1969, c. 814, § 2,[14] as the business derived more than twenty per cent of its revenue from interstate commerce. The judge found that although this was true, the acts in question occurred primarily within the Commonwealth. Thus, the exemption does not apply. See *Computer Syss. Eng'g, Inc.* v. *Qantel Corp.*, 571 F. Supp. 1365, 1371 (D. Mass. 1983), aff'd, 740 F.2d 59 (1st Cir. 1984).[15] Therefore, we affirm the judge's denial of Goverman's motion for summary judgment[16] and the denial of his motions for a directed verdict and for judgment notwithstanding the verdict with respect to SPI's c. 93A claim.[17]

---

[14] Goverman also contends that SPI's verified substituted complaint failed to respond to his affidavit setting forth facts that the businesses derived more than twenty per cent of their revenue from outside the Commonwealth. We disagree. Paragraph 11 of Count III of the verified substituted complaint states that Goverman "has been a person engaged in trade or commerce in the Commonwealth of Massachusetts." The complaint continues on to allege specific unfair and deceptive acts that had been committed by Goverman.

[15] The exemption in § 3 has been eliminated by St. 1983, c. 242. The acts complained of here occurred in 1978-1979, prior to the 1983 amendment.

[16] SPI contends that Goverman's appeal on his summary judgment motion is not properly before us because Goverman failed to list the issue as one of his grounds for appeal pursuant to Mass. R. A. P. 3 (a), as amended, 378 Mass. 924 (1979). The denial of Goverman's motion for partial summary judgment was interlocutory, and therefor, not ripe for appeal until the final judgment had been entered. See *Pollack* v. *Kelly*, 372 Mass. 469, 470-475 (1977). Goverman did file a written objection to the judge's denial of his motion thus notifying SPI pursuant to rule 3 of his intention to appeal. Since we affirm the judge's denial of Goverman's motion for judgment notwithstanding the verdict, we rule that SPI has not been prejudiced by Goverman's failure to list the denial of his summary judgment motion as one of his grounds for appeal.

[17] We also affirm the judge's denial of Goverman's motion for judgment notwithstanding the verdict as to his counterclaim under G. L. c. 93A.

4. *Requirement that statements made in brief must be supported by record.* Massachusetts R. A. P. 16 (e), as amended, 378 Mass. 925 (1979), provides that "[n]o statement of a fact of the case shall be made in any part of the brief without an appropriate and accurate record reference." Further, "a brief" not complying with this rule "may be struck in its entirety on our own initiative." *Boston Edison Co.* v. *Brookline Realty & Inv. Corp.,* 10 Mass. App. Ct. 63, 69 (1980).

We agree with Goverman that statements made by SPI in SPI's brief were argumentative in nature and were not substantiated by the record. We refuse to strike the entire brief but instead we have disregarded those portions of the brief of which Goverman complains. Our decision to reverse the judgment notwithstanding the verdict, and to affirm the jury's verdict for SPI on its c. 93A claim has been reached without regard to the statements in question.

5. *SPI's motion for additur.* We next address the issues raised by SPI with respect to the judge's refusal to grant an additur to the jury's award of $1.00 on Count I of the substituted complaint for breach of contract and to the award of $15,000 on Count III for violations of c. 93A.[18]

It was clear from the question submitted by the jury to the judge during deliberations, from the answer that was given (see note 7, *supra*), and from the jury's verdicts that the jury found that SPI had suffered no damages as a result of Goverman's breach. The judge also ruled in his memorandum that "[a]lthough the 93A damages were not established with precision, the verdict of $15,000 was warranted on Service's 93A claim."

An additur is appropriate where the judge concludes that the verdict is sound except for the amount of damages and that the amount of damages is unreasonable. *Freeman* v. *Wood,* 379 Mass. 777, 785 (1980). Here, because the judge found that

---

[18] Although SPI filed a motion for an additur on its award under c. 93A, the issue was not addressed in SPI's brief. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). We, therefore, confine our review to the denial of the additur on the breach of contract claim.

the amount of damages was "warranted" on the c. 93A count and the plaintiff offered no objections to the judge's answer to the jury regarding nominal damages, the judge properly reached no conclusion that would warrant an additur. Moreover, the facts were in dispute with respect to damages suffered by SPI.[19] It was, therefore, the jury's duty to assess the damages. The judge did not abuse his discretion by refusing to add to the jury's award.

6. *Conclusion.* For the foregoing reasons, we reverse the allowance of SPI's motion for judgment notwithstanding the verdict on Goverman's breach of contract claim and affirm the granting of the remittitur or in the alternative a new trial on the issue of damages.

We also affirm the judge's order denying Goverman's motion for judgment notwithstanding the verdict on SPI's breach of contract claim. The denial of Goverman's motion for judgment notwithstanding the verdict on his c. 93A claim is likewise affirmed.

*So ordered.*

---

[19] There was in issue, inter alia, whether Goverman set up a business in competition with SPI thereby causing damage to SPI, and whether SPI's $30,000 loss because of a Reply-O-Letter was attributable solely to Goverman's actions.