Cowin, J.
Plaintiff Banta Corporation (“Banta”), a printing company, brought this action to recover damages from defendant Total Graphics, Inc. (“TGI”), a printing broker, for failing to pay for the reprinting of a handbook ordered by a third company, Analog Devices, Inc. (“Analog”). The defendant does not deny receiving the handbook from the plaintiff, delivering said handbook to Analog, and receiving payment from Analog. TGI has admitted its debt to Banta under the claim in chief. TGI, however, has also counterclaimed against Banta. TGI alleges that Banta, by bidding directly on another printing project with Analog: (1) violated the provisions of G.L.c. 93A; (2) breached a common law covenant of good faith and fair dealing: and (3) tortiously interfered with TGI’s advantageous and contractual relations. Banta denies the counterclaims and moves for summary judgment pursuant to Mass.R.Civ.P. 56 on both its claim in chief and onTGI’s counterclaims.
BACKGROUND
The following facts are undisputed. Over the course of several years, TGI occasionally placed orders with Banta for the reprinting of handbooks for Analog. Analog was the only account on which TGI and Banta had business dealings.[1] The only papers documenting the business transactions between TGI and Banta were in the form of purchase orders. There was never a written contract between the parties.
In March 1991, Banta reprinted a handbook for Analog as a result of an order placed by TGI. The handbook was produced satisfactorily and TGI delivered it to Analog. Analog promptly paid TGI for the production of the handbook. At about the same time, in March, 1991, TGI requested Banta to bid on the production of a 25th Anniversary Catalog for Analog (“Catalog”).[2] Banta did so, and, according to its normal practice, TGI “marked up” Banta’s bid and submitted it to Analog.
Analog found TGI’s bid to be extremely high and attempted to negotiate a lower price.[3] TGI offered a second bid and Analog rejected it. Analog then informed TGI that it would contact printers directly for additional quotes on the project. Banta was one of the three printers directly contacted by Analog. Analog accepted Banta’s bid[4] and Banta successfully completed the job. Analog made timely payment to Banta.
Banta attempted in April 1991 to collect payment from TGI for the Analog handbook Banta produced in March 1991. TGI informed Banta that TGI refused to pay for the handbook project because of Banta’s dealings with Analog on the Catalog project.
In the spring of 1992, Analog ordered the reprint of a handbook from TGI. TGI did not respond to Analog, but Banta called Analog’s manager of communications, Marie Etchells (“Etchells”), and informed her that it could not perform the reprint because it was having difficulty receiving payments from TGI on another job.[5] Etchells then contacted TGI’s president, Lewis Ginsberg (“Ginsberg”), to find out his position on this matter. Ginsberg stated that the dispute stemmed from a disagreement with Banta over a previous job and that TGI was not experiencing financial troubles. Ginsberg also told Etchells that Analog could not use his negatives for the handbook and that it would have to obtain its own.
Approximately two weeks after this incident, Analog approached another printer, Summit Press, regarding data book negatives held by TGI. According to Etchells, Ginsberg told Summit Press that Summit Press could not use the negatives to perform a reprint job for Analog unless the printer paid TGI $200,000. Etchells recommended that Summit Press not pay for the films and instead reshoot the items needed for reprinting. Etchells states that this situation with Summit Press added to the deterioration of its relationship with TGI and Ginsberg.
Etchells also stated that even before the matters involving Banta and Summit Press, the quality ofTGI’s service had been declining. In January of 1992, Etchells had a discussion with Ginsberg regarding his pricing structure and lack of service. Again, after the *69 Summit Press matter, Etchells attempted to salvage Analog’s relationship with TGI, but Ginsberg told her that upon the advice of counsel, he could not speak to her. This conversation ended Analog and TGI’s business relations.
On or about September 17, 1992, Banta filed a complaint against TGI in the Dedham District Court for the sum of $8,563.90 representing the March 1991 handbook reprinting job for Analog. Defendant filed counterclaims on three counts as noted above. On June 15, 1993, this case was removed to the Norfolk County Superior Court. At oral argument on the instant motion for summary judgment, TGI admitted that it owes plaintiff $8,563.90 for printing the handbook for Analog.
DISCUSSION
Summary judgment is appropriate here because the defendant has failed to show that there exists any genuine issue of material fact.[6] See Kourouvadlis v. General Motors Corp., 410 Mass. 706 (1991).
I. Plaintiffs Claim
TGI admitted at oral argument that the amount of $8,563.90 is due Banta for printing the handbookTGI ordered for Analog. Thus, summary judgment shall enter for Banta on its complaint for $8,563.90 plus interest.
II. Defendant’s Counterclaims
A. G.L.c. 93A
“General Laws c. 93A, §§2 and 11 (1986 ed.), make unlawful ‘unfair or deceptive acts or practices in the conduct of any trade or commerce’ between two businesses. An act or practice may be ‘unfair’ within the statutory meaning without being deceptive or fraudulent." Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 729 (1989), citing, Service Publications, Inc. v. Goverman, 396 Mass. 567, 578 (1986). Conduct “in disregard of known contractual arrangements” which intends to benefit the breaching party is an unfair act or practice under c. 93A. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 474 (1991) (citations omitted). In addition, an act may violate c. 93A if it is “within at least the penumbra of some common-law, statutory, or other established concept of unfairness . . . [or] is immoral, unethical, oppressive, or unscrupulous.” Massachusetts Farm Bureau, supra (citations omitted).
TGI and Banta are both engaged in the printing business. TGI is a print broker and Banta is a printer. TGI claims that by bidding directly on the Catalog project with Analog, Banta violated the provisions of chapter 93A. The Court must resolve this question by determining whether Banta’s actions were “unfair.”
There is insufficient evidence in the summary judgment record to warrant findings on behalf of TGI on this claim. As a result, summary judgment will enter for Banta on this count of the counterclaim. The summary judgment record establishes the following facts. After discussions with TGI dissolved, Analog decided to contact printers directly for bids on its Catalog project. Analog contacted Banta and Banta submitted a bid. This act was not fraudulent or deceptive. On the record before me, and drawing all inferences in favor of TGI, there is insufficient evidence to warrant a finding of any contractual arrangement between Banta and TGI or between TGI and Analog. Banta’s actions also did not violate any common-law, statutory, or other concept of unfairness.
The Supreme Judicial Court has noted that to bar a party under §11 of c. 93A “from competing for a business advantage because he is made aware that another has been exerting himself to the same end ... would be an extravagant rule of law.” Doliner v. Brown, 21 Mass.App.Ct. 692, 698 (1986). Banta and TGI are business competitors who at times did business together to perform work for Analog. This relationship was not an exclusive one especially since Banta also had an independent relationship with an Analog subsidiary in California. In this case, Banta successfully captured a printing job that TGI had the opportunity to obtain, but did not. Banta’s conduct was not unfair and does not amount to a violation of chapter 93A.
B. Covenant of Good Faith and Fair Dealing
G.L.c. 106, §1-203 (1992 ed.) states that “[e]very contract or duty . . . imposes an obligation of good faith in its performance and enforcement.” “The implied covenant of good faith and fair dealing provides ‘that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . .’ ” Anthony’s Pier Four, supra at 471 (citations omitted).
Because there was no contract between TGI and Banta, there was no breach of the covenant of good faith and fair dealing. See Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992). TGI suggests that a contract existed between TGI and Banta because over the course of many years the two companies acted together to complete projects for Analog. TGI argues that under this “contract” Banta should refrain from bidding directly on any projects with Analog.
The general rule is that evidence of custom and usage cannot be used to create a contract. 25 C.J.S. Customs & Usages §20 (1966). Course of dealing and usage of trade may be used, however, to clarify the terms of an existing contract or “where the law may imply a contract, . . . establish the terms thereof." Id. See also G.L.c. 106, §1-205 (1992 ed.). Since there was no express contract in this case, evidence of Banta and TGI’s course of dealing or the usage of the printing trade regarding bidding procedures is irrelevant. I am unwilling to imply a contract in this case because, applying summary judgment standards, there is insufficient evidence to warrant a finding that Banta ever intended to have TGI act as the exclusive agent for its *70 business transactions with Analog. The existence of a separate relationship with Analog in California indicates that Banta bid directly with Analog in the past and intended to continue the practice in the future.
C. Tortious Interference
In an action for intentional interference with contract, the moving party must show both intentional and improper interference. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 816 (1990); Restatement (Second) ofTorts §766 (1979). In addition, “[a] competitor may ‘interfere’ with another’s contractual expectancy by picking the deal off for himself, if, in advancing his own interest, he refrains from employing wrongful means.” Doliner, supra at 695; Restatement (Second) ofTorts §768 (1979).
I conclude that Banta did not intentionally interfere with TGI’s business relationship with Analog as TGI has not sustained its burden of presenting adequate evidence on the summary judgment record to warrant findings in its behalf. A relationship had ceased to exist between TGI and Analog with regard to the Catalog project. Analog received two bids from TGI for the Catalog project, rejected these bids, and informed TGI that it would directly request bids from printers. Banta also did not improperly interfere with TGI’s business relationship with Analog. Banta’s act of bidding on the Catalog project was not wrongful since it had no improper motives and did not use improper means. United Trucking supra at 816. Conduct such as threats, misrepresentations of fact, or defamation has amounted to improper interference with contracts. Id. at 817. Banta engaged in none of these acts. Banta was not attempting to inflict injury on TGI; instead it was seeking to further its own commercial position. See Doliner, supra at 695. Therefore, Banta did not tortiously interfere with any contractual relations between TGI and Analog.
TGI also claims that Banta interfered with its advantageous relations with Analog. Again, TGI has not sustained its burden on the present record. TGI has not demonstrated that Banta intentionally or maliciously interfered with TGI and Analog’s business relationship. TGI has failed to show that its loss of advantage directly resulted from Banta’s conduct rather than from its own failings. See Nolan and Sartorio, Tort Law §98, at 134 (1989).
ORDER
For the foregoing reasons, it is hereby ORDERED that the plaintiffs motion for summary judgment is ALLOWED on the claim in chief in the amount of $8,563.90 plus interest and costs. Summary judgment is also ALLOWED for the plaintiff on all counts of the defendant’s counterclaim.

 Banta also provided printing services for a California branch of Analog. These transactions were conducted without TGI’s participation.

There is some dispute between the parties whether Banta knew that the project was for Analog. This dispute is not critical to the resolution of the instant motion.

Analog also implied that it would scratch the project if it could not get a lower bid.

Banta’s bid to Analog was identical to the one submitted to TGI except for a change due to Analog’s color specifications.

It is not clear from the materials provided how Banta came to discuss this matter with Analog.

TGI lists a number of alleged disputed material facts. Said facts are not in dispute, however, as several are based upon incompetent opinion or hearsay testimony of Lewis Ginsberg. The remainder do not involve material facts or are undisputed.