Quinlan, J.
INTRODUCTION
This case is before the Court on the above-captioned motions, following a trial and jury verdict against the defendant, James K. Vernon, M.D. (“Dr. Vernon”), for $1 million, based on his failure to properly diagnose the decedent, Paula Bolles’s breast cancer.
Dr. Vernon has moved for judgment notwithstanding the verdict (JNOV) on the grounds that there was insufficient evidence to establish either that he departed from his standard of care or that any action or inaction on his part caused or contributed to any injuries, damages or death to Paula Bolles. Dr. Vernon has moved for a new trial on the grounds that he was prejudiced by plaintiffs counsel’s reference, in the jury’s presence, to another case pending against Dr. Vernon during cross-examination of a defense expert.
In opposition, the plaintiff asserts that the testimony of its experts sufficiently established the standard of care Dr. Vernon was obligated to exercise, his breach thereof, and the causal connection between the breach and the harm to the decedent. He also argues that Dr. Vernon was not prejudiced by his counsel’s inadvertent reference to another case against Dr. Vernon.
For the reasons which follow, the defendant’s motions are DENIED.
DISCUSSION
A. Judgment Notwithstanding the Verdict
The standard governing a motion for judgment notwithstanding the verdict is the same as that for a directed verdict, that is, whether evidence construed against the moving party justifies a verdict against him. See Henderson v. D’Annolfo, 15 Mass.App.Ct. 413, 419 (1983). In acting on a defendant’s motion for JNOV, it is the trial judge’s task, taking into account all of the evidence in its aspect most favorable to the plaintiff, to determine whether, without weighing credibility of witnesses or otherwise considering weight of evidence, the juiy reasonably could return a verdict for the plaintiff. Rubel v. Hayden, Harding & Buchanan, Inc., 15 Mass.App.Ct. 252, 254 (1983).
1. Standard of Care and Departure Therefrom
In a medical malpractice action, the plaintiff must prove that the defendant physician departed from the standard of care owed by physicians in his specialty, which departure directly and proximatefy causes the plaintiffs injuries. Harlow v. Chin, 405 Mass. 697, 701 (1989). The causal relationship between medical care provided by the defendant physician and a patient’s injuries must be established by expert testimony. Id. at 702. Moreover, the plaintiff must show that the alleged injury more likely resulted from an act of negligence by the defendant than from a cause for which the defendant is not responsible. Forlano v. Hughes, 393 Mass. 502, 507 (1984).
Dr. Vernon asserts that the plaintiff failed to establish that he departed from the standard of care owed to Paula Bolles, or that there was any causal connection between his alleged negligence and Paula Bolles’s death. As to standard of care, his argument seems to be that because the plaintiffs expert, Dr. Francis J. O’Connor, M.D., was a radiologist and not a surgeon, he was unqualified to establish the standard of care owed by Dr. Vernon, who is a surgeon, in responding to the discovery of a lump in a woman’s breast. Unfortunately for Dr. Vernon, the law in Massachusetts is to the contrary.
In Letch v. Daniels, 401 Mass. 65 (1987), the Supreme Judicial Court stated that a medical expert need not be a specialist in the area concerned nor be practicing in the same field as the defendant. See id. at 68. “The crucial issue is whether the witness has sufficient education, training, experience and familiarity with the subject matter of the testimony.” Id. A trial judge has broad discretion in determining the qualifications of a witness to testify as an expert. Id. at 66.
In this case, the court was satisfied that Dr. O’Connor was qualified to testify as an expert regarding the standard of care owed when a doctor — including a surgeon— discovers a lump in a woman’s breast. The court need not rehash Dr. O’Connor’s entire testimony as to his qualifications, but notes that he spent twenty-five years at Augusta General Hospital in Maine, where he developed an extensive teaching program which included training individuals in diagnosing breast cancer, see Trial Transcript at 3-9, and thereafter he spent eight years developing a cancer care program at a West Virginia hospital. Trial Transcript at 3-8 to 3-9. Dr. O’Connor testified that he worked as a surveyor for the American College of Surgeons’ Commission on Cancer, in which capacity it was his job to review hospitals to determine if they met with acceptable standards of cancer care. See Trial Transcript at 3-15 to 3-17. Dr. O’Connor testified that he personally performed over 5,000 breast examinations. Trial Transcript at 3-19. He also testified that he has been consulted as to standards of care since the early 1970s, and has testified in the *175 courts of numerous states, including Massachusetts, as to standard of care. Trial Transcript at 3-22 to 3-23. In short, Dr. O’Connor was qualified to testify as to the standard of care owed by Dr. Vernon in the circumstances of the present case.
As for whether Dr. Vernon departed from the standard of care, Dr. O’Connor’s testimony was sufficient to support such a verdict. Dr. O’Connor testified that breast examinations are usually taught during the second year of medical school, and that when an abnormality is found, the response should be the same regardless of the examiner’s specialty. Trial Transcript at 3-10, 3-12. He further testified that once a lump is detected in a breast, the only way to definitively diagnose whether it is cancer is to perform a biopsy. Trial Transcript at 3-37. He testified that once a breast examination reveals an abnormality, the examiner must record the location, the size, and the firmness of the lump. Trial Transcript at 3-46. He testified that based on Dr. Vernon’s finding a prominence during his breast examination of Paula Bolles on December 11, 1989, Dr. Vernon should have performed abiopsy, and that his failure to do so deviated from the standard of care. Trial Transcript at 3-79 to 3-82. He also testified that Dr. Vernon’s failure to measure the lump deviated from the standard of care. Trial Transcript at 3-101 to 3-102. He testified that Dr. Vernon further deviated from the standard of care when he examined Paula Bolles again in April of 1990, found that the lump had become more prominent, and did not perform a biopsy. Trial Transcript at 3-102. He testified that Dr. Vernon again deviated from the standard of care when Paula Bolles returned in May and Dr. Vernon again failed to perform a biopsy, Trial Transcript at 3-105.
In sum, there was ample testimony to establish that Dr. Vernon deviated from the standard of care he should have exercised once he discovered the lump in Paula Bolles’s breast, and again when she returned for re-examination on two more occasions.
2. Causation[3]
a. Paula Bolles’s Death
Dr. O’Connor testified that in his opinion, had Paula Bolles been properly diagnosed in April 1990, she more likely than not would have survived. Trial Transcript at 3-104. He testified that she would have had an increased likelihood of survival had she been properly diagnosed in May 1990, at the time of her third visit to Dr. Vernon. He testified that had she been diagnosed when she was first seen, she would have had a better than 90 percent chance of survival. Trial Transcript at 3-130. The plaintiff also provided testimony of causation through Dr. Girdup Sidhu, who testified that as of June 1990, when Paula Bolles was finally diagnosed with cancer, the size of the largest lymph node indicated that the tumor had spread beyond the local site within the preceding few weeks. Trial Transcript at 4-18 to 4-20. He testified that the type of cancer that Paula Bolles had was curable if caught in the early stages. Trial Transcript at 4-10. He testified that had Paula Bolles’s cancer been discovered more than a few weeks before June 1990, it would have been curable. Trial Transcript at 4-22 to 4-23. He also testified that had Dr. Vernon exercised the proper standard of care in May 1990, Paula Bolles would have had a good chance of surviving because the tumor had not spread beyond the local site. Trial Transcript at 4-26 to 4-28.
In sum, there was ample evidence to establish that Paula Bolles’s death was caused by the defendant’s negligence in failing to perform a biopsy on the prominence in her breast sooner than June of 1990.
b. Conscious Pain & Suffering
Dr. Vernon claims that the portion of the jury’s verdict awarded for conscious pain and suffering, $1 million, is unsupported by any evidence that Paula Bolles’s suffering would have been any less had she been properly diagnosed in December of 1989. For example, Dr. Vernon points out, there was no evidence that Paula Bolles would not have undergone a mastectomy, chemotherapy, and bone stem transplant even if she had been diagnosed sooner.
The court disagrees that the award for pain and suffering was unsupported. First, given the jury’s finding that Paula Bolles’s death was due to the failure to diagnose her cancer sooner, the jury could infer that her suffering was much greater in light of the mere fact that the disease continued to progress to the point of death, whereas had it been arrested she would have never experienced the suffering associated with the latter stages of the disease. Second, the evidence supported a finding that Paula Bolles’s suffering was exacerbated by the mere knowledge that she was going to die due to Dr. Vernon’s negligence.
B. Motion for a New Trial
Dr. Vernon lists five separate grounds for this motion. The first three relate to the same issues that form the basis for the motion for JNOV, and for the same reasons already discussed, the court denies a motion for a new trial on these grounds. The fourth ground is that the amount of damages were excessive and unsupported by the evidence. The court disagrees that a $1 million award for the pain and suffering associated with a two-and-a-half-year battle with cancer that, as the jury apparently and justifiably found, could have been largely avoided or greatly diminished had Dr. Vernon made a timely diagnosis, is excessive. The court does not think that either a new trial or a remittitur of a portion of the award is justified based on the amount of the verdict.
The fifth and final ground for a new trial is that plaintiffs counsel, during cross-examination of a defense expert, referred to another pending claim against Dr. Vernon in which the witness was also a defense expert. Dr. Vernon asserts that this created unfair prejudice such that the jury could not render a fair verdict.
*176 Mass.R.Civ.P. 61 states, “No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at eveiy stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.”
The court disagrees that the defendant was unfairly prejudiced by reference to the other case against Dr. Vernon. The reference to the other case was unfortunate, especially given that the court had ruled during a sidebar conference that plaintiffs counsel should not mention the other case. Nonetheless, the court is not even certain that it would be error to allow the jury to know the defense expert was also an expert in another case against Dr. Vernon, given that parties are allowed as a matter of right to introduce evidence that may reflect on a witness’s bias or prejudice. See Commonwealth v. Martinez, 384 Mass. 377, 380 (1981). It certainly goes to a witness’s bias that he is being paid to testify on behalf of a party, whether in the present case, another case, or both. But even assuming that the reference to the other case was improper, the court rules that it did not infect the trial with prejudice sufficient to warrant a new trial, given the amount and strength of evidence supporting the plaintiffs claim against Dr. Vernon. In other words, the court’s denial of a mistrial following plaintiffs counsel's inadvertent reference to the other case, if error at all, was harmless error, and pursuant to Mass.R.Civ.P. 61, no new trial is warranted.
ORDER
For the foregoing reasons, the Court ORDERS that the defendant’s Motion for Judgment Notwithstanding the Verdict is DENIED, and the defendant’s Motion for a New Trial is DENIED.

In his motion, Dr. Vernon states that “[t]here is no evidence that any action or nonaction of the defendant either caused or contributed to cause injuries, damages, or death to Paula Bolles.” Although this statement seems to address the causal relationship (or lack thereof! between Dr. Vernon’s negligence and Paula Bolles’s death, Dr. Vernon argues in his memorandum that it is the portion of the jury’s verdict awarded for conscious pain and suffering that he is contesting, claiming that “there is absolutely no evidence that the treatment, surgery, hospitalizations, and medical care received by Mrs. Bolles from June 1990 to the time of her death would have been any different or less intrusive had the diagnosis of cancer been made in December of 1989 and treatment started at that point.” The court addresses both issues of causation.