Fahey, Elizabeth M., J.
INTRODUCTION
Plaintiff Willie Evans (“Evans”), as executor of the estate of Marie R. Evans (“Marie”), brought this action against defendant Lorillard Tobacco Company (“Lorillard”). At the end of trial, the jury awarded Evans $50 million for Marie’s conscious pain and suffering and death, $21 million for Evans’s loss of his mother’s consortium, and $81 million in punitive damages. Lorillard now moves for remittitur on both the compensatory and punitive damages. For the following reasons, the motion is ALLOWED in part and DENIED in part.
DISCUSSION
The defendant challenges both the compensatory awards and the punitive award as being excessive.
I. COMPENSATORY DAMAGES
A. Standard
Massachusetts’ courts give great deference to a jury’s assessment of compensatory damages, particularly for intangibles such as pain and suffering and emotional distress because such damages are inherently difficult to prove with certainty, rebut, or evaluate. Labonte v. Hutchins & Wheeler, 424 Mass. 813, 825 (1997); Borne v. Haverhill Golf & Country Club, Inc., 58 Mass.App.Ct. 306, 320 (2003) (“A jury, composed, as they are, of persons from varying walks of life and reflecting a variety of experience, make a particularly suitable institution for assessing [intangible damages]”).
On a motion for remittitur, a court may only disturb an award of compensatory damages if it was unsupported by substantial evidence in the record, i.e., “greatly disproportionate to the injury proven or represented a miscarriage of justice.” Labonte, 424 Mass. at 824 (citation omitted). The size of the verdict alone does not determine whether it is excessive; the judge must consider “whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.” Id. at 825 (citation omitted).
A judge has broad discretion to act on a motion for a remittitur. Baudanza v. Comcast of Massachusetts I, Inc., 454 Mass. 622, 630 (2009) (citation omitted); Powers v. H.B. Smith Co., 42 Mass.App.Ct. 657, 665 (1997). The judge is not obliged to make the smallest modification possible, but rather may “bring the verdict anywhere within the range of verdicts supported by the evidence.” D’Annolfo v. Stoneham Hous. Auth., 375 Mass. 650, 662 (1978). Pursuant to Mass.R.Civ.P. 59, if the judge grants a remittitur, the plaintiff may choose to accept the remitted amount or have a new trial on the issue of damages. See Waucantuck Mills v. Magee Carpet Co., 225 Mass. 31, 33, 113 N.E. 573 (1916) (when grounds for new trial relate only to damages, “disassociated from every other contributing, related or vitiating cause,” new trial should treat only damages).
B. Analysis
Lorillard seeks a reduction of the jury’s awards of $50 million for Marie’s conscious pain and suffering and death and $21 million for Evans’s loss of consortium on the grounds that both are excessive and not supported by substantial evidence. Evans argues that the verdicts must stand because there was no indication that the jury was improperly motivated and the trial evidence adequately supports the awards. This court cannot agree. Although the jury evinced an admirable dedication to its civic duty, including deliberating six full days before returning a verdict, it is necessary to remit both compensatory awards.
In this case, the jury heard substantial evidence of Marie’s pain and suffering and Evans’s loss of consortium, including Marie’s videotaped deposition describing her cancer symptoms, arduous treatments and poor quality of life as a result of the cancer and Evans’s and other family members’ testimony about his exceptionally close relationship with his mother. However, it did not hear any evidence of economic damages, including any medical expenses, lost wages or diminished earning capacity, or lost financial support.[2] The parties stipulated the burial expenses were *232 $16,601.10. Absent substantial evidence of economic damages and notwithstanding their extremely close relationship as mother/son, the jury’s awards of $50 million for Marie’s conscious pain and suffering and death and $21 million for Evans’s loss of consortium seem extraordinarily large.
Defendant’s motion for remittitur on the compensatory damages awarded for Marie Evans’s pain and suffering and death fails to recognize that the jury was also permitted to award compensatory damages for her development of the cancer which killed her, and that the development of cancer likely entails substantial mental suffering, even if death does not result. However, even given that injury, the development of the cancer that killed her, this court is concerned about the disparity between Evans’s proven economic damages and the compensatory award of $50 million. Given her development of and death from cancer and the consequent mental and physical pain she suffered, the question that must be addressed is whether an award of $50 million is “within the necessarily uncertain limits of just damages.” LaBonte v. Hutchins and Wheeler, 424 Mass. 813, 827 (1997), quoting Mather v. Griffin Hosp., 207 Conn. 125, 139 (1988).
An alternative way to address this is whether “the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.”[3] Id. at 825. Whether the jury’s award of $50 million for Ms. Evans’s development and death from cancer “shocks” the sense of justice is a very difficult question for this court. Whether it is at the extreme edge of what is a reasonable compensatory award for that devastating injury, the development of and death from cancer, after living for six months with the knowledge that Lorillard lied about knowing whether smoking causes cancer, is also a very difficult question for this court.
Since Ms. Evans was deposed within that six months and was then represented by trial counsel, I accept that she was aware of the basis of the claims eventually asserted against Lorillard, all of which likely caused additional mental paid and suffering. To be caused cancer, to live for six months knowing that you likely would not have been at risk to develop this cancer if Lorillard had dealt with you honestly, to be caused to undergo the treatments for that cancer, and to die prematurely from that cancer, certainly deserves a substantial award. But even substantial awards must be within the realm of reasonableness of compensation for the injuiy incurred. Evans is entitled to an award for all of the harm Marie suffered: i.e., the diagnosis of cancer[4] and her mental and physical pain and suffering as a result, her loss of enjoyment of life, especially including in her case, her loss of her family life, with her son and other relatives. Given the extent of Ms. Evans’s pain, suffering and death, I am satisfied that a compensatory award of $25,000,000.00 is appropriate, reasonable and just.
As to the $21 million compensatory award to Willie Evans, I am satisfied that that amount is beyond the largest reasonable compensatory award, even for that significant a loss. I am satisfied that the largest reasonable compensatory award for his significant loss is $10 million.
Both parties have submitted a variety of jury verdicts they argue are comparable to this case; however, Evans argues that the court should not consult so called “comparative cases” in deciding this motion for remittitur. Although “reasoning from such comparative verdicts from various jurisdictions is a dangerous game, to say the least,” Griffin v. General Motors Corp., 380 Mass. 362, 371 (1980) (internal quotations and citations omitted), Massachusetts’ courts have nevertheless found comparison a useful tool, if not the basis, for determining excessiveness.[5] See Labonte, 424 Mass. at 825-26 n. 17 (emphasizing that the court did not rely on damage awards in comparable cases to arrive at its conclusion, but simply to buttress it); see also Clifton v. MBTA, 2000 WL 218397 at *8 (Mass.Super. 2000) [11 Mass. L. Rptr. 316] (noting: “ [evaluating a damage award in terms of what other juries and judges have done is of limited value, both because each case presents different facts and because the outcome of the analysis depends on which of the hundreds of comparable cases are brought to the court’s attention,” before proceeding to compare similar verdicts).[6]
Most of the cases submitted by both parties involve drastically different circumstances than those in this case.[7] The parties’ submitted tobacco litigation cases were more comparable, and this court specifically notes that in Phillip Morris USA, Inc. v. Lukacs, 34 So.3d 56 (Fla.Dist.Ct.App. 2010), a tobacco products liability suit, a Florida Appeals Court upheld jury awards of $12.5 million to a deceased smoker’s wife and $24.5 million to a deceased smoker for nonecono-mic damages for tongue and bladder cancer including pain and suffering, disability or physical impairment, disfigurement, mental anguish, inconvenience and loss of capacity of the enjoyment of life.[8] The facts in that case and the noneconomic damages suffered by the decedent appear similar to those in this case. This court’s remitted award of $25,000,000.00 for Willie Evans, Executor is appropriate given the extent of Ms. Evans’s injuries[9] as is the remitted award of $10,000,000.00 for Willie Evans, individually.
Considering the totality of the evidence presented to the jury in this case and damages awarded in similar cases, it is necessaiy, at least for this court, to conclude that Marie’s development of cancer, and her consequent pain and suffering from that cancer and her ultimate death did not rise to the level of the juiy’s award. This court is satisfied that an award of $25 million for Marie Evans’s development and death from cancer is reasonable, appropriate and just. Similarly, Evans’s loss, however while real and significant, did *233 not rise to the level awarded by the jury. This court concludes that fair and reasonable compensation for Evans’s loss of his mother’s consortium is $10,000,000.00.
II. PUNITIVE DAMAGES
Lorillard also contends that the award of $81 million in punitive damages should be remitted as excessive. This court disagrees.
1. Standard
“Punitive damages are appropriate ‘where a defendant’s conduct warrants condemnation and deterrence.’ ” Dartt v. Browning-Ferris Industries, Inc. (Mass.), 427 Mass. 1, 17 (1998). The Supreme Judicial Court has mandated that trial courts review punitive damage awards to ensure that they are not excessive or unreasonable, in light of the following three factors: (1) the degree of reprehensibility of the defendant’s conduct; (2) the actual harm inflicted on the plaintiff; and (3) comparison with any civil or criminal penalties that could be imposed for comparable misconduct. See Labonte, 424 Mass. at 826-27, citing BMW of North America, Inc. v. Gore, 571 U.S. 559, 574-75 (1996). In Labonte, the court also noted certain additional considerations that may assist in evaluating the reasonableness of the award, including: “a reasonable relationship to the harm that is likely to occur from the defendant’s conduct as well as to the harm that actually has occurred; a reasonable relationship to the degree of reprehensibility of the defendant’s conduct; removal of the profit of an illegal activity and be in excess of it so that the defendant recognizes a loss; factoring in of the financial position of the defendant; factoring in of the costs of litigation and encourage plaintiffs to bring wrongdoers to trial; an examination whether criminal sanctions have been imposed; an examination whether other civil actions have been filed against the same defendant.” 424 Mass, at 826-27 (citation omitted). Having considered each of these factors insofar as applicable to the facts of this case, and from the evidence offered, this court concludes that the jury’s award of punitive damages is reasonable.
B. Analysis
The first, and perhaps most important factor is the degree of reprehensibility of the defendant’s conduct, BMW, 571 U.S. at 575. Here, the evidence supported the jury’s finding of liability for punitive damages based on gross negligence and malicious, willful, wanton or reckless conduct. Based on the evidence, the jury could have found that Lorillard had illegally distributed cigarettes to minors to get them addicted to smoking, that it intentionally misled Marie and the public for decades regarding the health hazards of smoking, all while Lorillard’s own research showed that smoking cigarettes caused cancer and other health issues in the smoker, that Lorillard intentionally manipulated levels of nicotine to keep smokers addicted, and that it chose not to produce a safer cigarette. Such conclusions were supported by substantial evidence and such conduct is no doubt reprehensible.
Here, the compensatory damages after remittitur total $35,000,000.00. Thus, the compensatory to punitive damages award represents almost a 1:2.5 (35 million: 81 million) ratio, and likely comports with due process. The 1:2.5 ratio between compensatory and punitive damages, by itself, does not cross any constitutional line of unfairness because there is no such categorical line. See BMW, 517 U.S. at 580-83; State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 424-25 (2003). Moreover, although single-digit ratios are “more likely ... to comport with due process,” a higher ratio may be justified in cases where, as here, the defendant’s conduct is particularly reprehensible, State Farm 538 U.S. at 425, and where the reprehensible conduct occurs over decades. The real consideration in the second Labonte factor is evaluating this ratio based on whether the actual punitive damages award is reasonable in view of the actual harm suffered by the plaintiff. TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 460 (1993). Here, the actual harm inflicted was great. Lorillard gave Marie an increased risk of developing and dying from cancer, which it knew but did not share with her or the public, as a result of which she suffered six months of cancer and treatments before her death, and Evans lost his mother. As mentioned above, the jury heard evidence of Marie’s conscious suffering and evidence of the close relationship between Marie and Evans which he lost as a result of her death at the age of 54. The jury could and did conclude that Lorillard’s conduct was a substantial factor in causing her lung cancer and death, and the amount of punitive damages was neither unreasonable nor excessive.
The third Labonte factor is a comparison of the punitive damage award with any civil or criminal penalties that could be imposed for comparable misconduct. Neither party has brought any such penalties to this court’s attention.
Of the additional factors referenced by Labonte, one raised by the plaintiff weighs particularly strongly against remittitur.[10] Lorillard is presently financially sound. Trial testimony revealed profits of $890 million in 2007, $885 million in 2008, and $949 million in 2009. Additionally, Lorillard had profits of $770 million in the first three quarters of 2010. The punitive damages awarded would represent less than one week’s worth of Lorillard’s revenue. Furthermore, although wrongful death actions, when successful, often result in compensatory damage awards sufficient to provide plaintiffs and their counsel with ample economic incentive to bring such actions, the litigation costs factor here supports upholding the punitive damages award. Although Evans has not yet had the opportunity to submit an affidavit regarding his attor *234 neys fees and costs, all signs indicate that such expenses will be substantial. This was a hard fought battle where Lorillard adopted a combative approach, filing a number of ultimately meritless motions,[11] including numerous motions in limine, which forced Evans’s counsel to devote additional time to respond. From what this court observed, Lorillard’s scorched-earth approach created such a high litigation cost that future plaintiffs may be dissuaded from filing legitimate lawsuits, if not for the availability of punitive damages like that awarded in this case.
Consideration of all the Labonte factors suggests that the jury’s award of punitive damages is not excessive. Punitive damages of $81 is a reasonable amount sufficient to deter Lorillard’s future reprehensible conduct.
Accordingly, this court will remit the compensatory damages award of $50,000,000.00 for Marie to $25,000,000.00 and will remit the $21,000,000.00 compensatory award to $ 10,000,000.00 for Evans and will uphold the punitive damages award. Evans will have 20 days from the date of this Order to inform this court of his choice to either accept the reduced amount of damages or have a new trial limited to the issue of compensatory damages.
ORDER
For the foregoing reasons, it is hereby ORDERED that Lorillard Tobacco Company’s Motion for Remitti-tur be ALLOWED in part to the extent that this court orders a remittitur of the compensatory damages award for Willie Evans as Executor from $50,000,000.00 to $25,000,000.00 and Willie Evans Individually from $21,000,000 to $10,000,000.00; and DENIED in part with respect to the punitive damages award. The plaintiff has 20 days from the date of this Order to inform the court in writing as to whether he accepts the reduced amount of damages. If he rejects this reduced damage award, then a new trial on the limited issue of the plaintiffs compensatory damages shall be scheduled.
Judgment is to ENTER for the plaintiff Willie Evans as Executor of the Estate of Marie Evans in the amount of $25,000,000.00 compensatory damages, in the amount of $10,000,000.00 compensatory damages to Willie Evans and $81,000,000.00 in punitive damages, plus statutory interest on both the compensatory and punitive awards.

‘The disproportion between the plaintiffs’ combined [economic damages] of $1,523.40 and a verdict of $60,000 is a proper factor for a trial judge to take into account when deciding whether the jury has awarded excessive damages.” Magaw v. MBTA, 21 Mass.App.Ct. 129, 137 (1985), citing Griffin, 380 Mass. at 371.

This is the stated legal standard. This court is entirely satisfied that the jury was not partial, prejudiced or in any way corrupt. The only question is whether the jury’s awards reflect a mistake.

By the time her cancer was diagnosed, it had already metastasized to several locations in her body.

Such comparison is appropriate even where there is nothing to suggest that the jury was motivated by bias or prejudice. See Labonte, 424 Mass, at 825 (and cases cited).

This case is cited by Evans.

For example, some cases involved injuries resulting from car accidents and medical negligence, which likely included substantial future medical expenses.

Lorillard offered several tobacco cases with more modest jury awards, but failed to elaborate on the circumstances and extent of the decedents’ injuries in those cases and on how they are comparable to those in this case.

This court notes, as in Labonte and other cases, that it did not rely on comparisons to the specific cases in arriving at its conclusion; however, the comparable verdict in this case serves to buttress the result.

Although plaintiff raised an additional factor, that of litigation costs as a basis to uphold the punitive damages award, in light of this court’s decision on plaintiffs c. 93A claim and the consequent award of attorneys fees, this court is not relying on that ground as a basis for upholding the jury’s punitive damage award.

For example, Lorillard initially and for years contested whether Marie had small cell lung cancer and whether it was caused by smoking, forcing Evans to incur significant costs in retaining experts on the issue, only to waive the issue just before trial and stipulate that Ms. Evans died of small cell lung cancer caused by smoking.