Gordon, Robert B., J.
Presented for decision is Defendant American Medical Response of Massachusetts, Inc.’s Motion for New Trial or Remittitur. This motion follows a seven-day jury trial that produced a verdict for the plaintiff on each of two Wrongful Death Act claims in the cumulative amount of $1,500,000.00. The jury found AMR’s Emergency Medical Technicians (EMTs) to have been negligent in causing Barbara Grimes’ death, and awarded damages to the Grimes estate under G.L.c. 229, Sec. 6 for the decedent’s conscious pain and suffering in the amount of $1,425,000.00. The jury additionally awarded $25,000.00 to each of Ms. Grimes’ three surviving siblings (her statutory next of kin) as compensation for the loss of their sister’s consortium and services under G.L.c. 229, Sec. 2.
AMR has timely filed a Motion for New Trial or Remittitur pursuant to Mass.RCiv.P. 59(a). This motion rests upon the singular contention that the award of $1,425,000.00 in damages for Ms. Grimes’ conscious pain and suffering is grossly excessive and unsupported by any fair assessment of the trial evidence. AMR argues that the excessiveness of the jury’s verdict was the product of counsel-stoked passion, pity and partiality, and that it must be vacated or substantially remitted in the interests of justice.
RELEVANT FACTS
Construed in the light most favorable to the plaintiff and his verdict, as Rule 59 requires, the evidence at trial demonstrated the following pertinent facts. On the morning of January 31, 2009, Barbara Grimes underwent scheduled dialysis treatment at Fresenius Medical Center and was then to be transported by ambulance to her nursing home. At approximately 11:02 a.m., as she was being readied for placement into the ambulance by two of AMR’s EMTs, the stretcher carrying Ms. Grimes collapsed and tipped over. As a result, Ms. Grimes fell to the ground and struck her head. Ms. Grimes, who was at the time taking a prescribed blood thinner and two narcotic pain-relievers in connection with her dialysis, suffered cuts to her head and began to bleed internally as well as externally.
AMR's EMTs (Wesley Garber and Peter Crowell) promptly placed Ms. Grimes into the ambulance, and then bandaged her wounds while they waited for assistance from another paramedic whom they had notified. When this third paramedic (Michael Isner) arrived approximately five to ten minutes later, Ms. Grimes was transferred to his ambulance for transport. Ms. Grimes was moaning and groaning at the time, and, after repeated questioning from the paramedic, she stated that her head hurt and that she felt nauseous. After several minutes on the scene, during which Ms. Grimes repeated the statement that her head hurt but a single time, Mr. Isner directed the ambulance driver to take Ms. Grimes to Jordan Hospital.
As the ambulance approached the hospital, Ms. Grimes’ answers to the paramedic’s questions became increasingly less responsive. Records from Jordan Hospital reflect that when she arrived at its Emergency Department at 11:31 a.m., just 29 minutes after the accident, Ms. Grimes was altogether non-responsive. Indeed, plaintiffs counsel acknowledged during his closing argument that Ms. Grimes’ “last moments of consciousness were spent in the back of an ambulance in pain.”
The evidence at trial established that Ms. Grimes never regained consciousness from the time of her initial admission to Jordan Hospital until the time she expired. Ms. Grimes was transferred to Beth Israel Deaconess Medical Center that same day, where neurological exams confirmed minimal brain stem reflex. *652 Ms. Grimes was evaluated multiple times over the ensuing four days at Beth Israel, and displayed no neurological improvement or responsiveness of any kind. After four days in this vegetative state, Ms. Grimes’ siblings made the decision to discontinue her life support. Ms. Grimes died shortly thereafter.
The foregoing summary represents, quite literally, all that the evidence showed in the way of Barbara Grimes’ conscious pain and suffering. Ms. Grimes lived just four days following her accident, and all but (at most) the first 29 minutes of that time period were spent in a coma in which she exhibited virtually no brain activily. In the less than half-hour she was conscious following her fall, there is no evidence suggesting that Ms. Grimes experienced any significant pain. Indeed, Ms. Grimes was already under the influence of two narcotic pain-killers (morphine and vicodin) as a result of her recently completed dialysis. No percipient witness and no expert testified that Ms. Grimes either was or was likely to have been suffering pain, and the substantial body of medical records introduced into evidence at trial reflect no observations or other indicia to this effect. It is true that Ms. Grimes was heard to moan after her fall, and stated to a questioning paramedic that her head hurt; but she did not ciy, scream, or exhibit any other signs of physical agony, and there is no evidence suggesting that Ms. Grimes suffered the torment of knowing that her death was imminent. Rather, Ms. Grimes experienced what to all appearances was an ordinary fall and non-severe head injury, which turned fatal quickly and uneventfully due to internal bleeding before she could suffer any significant conscious pain.
DISCUSSION
The trial judge has “broad discretion” to order anew trial, or a remittitur of the verdict, if the damages awarded are excessive based on the evidence of the injury proven. See Reckis v. Johnson & Johnson, 471 Mass. 272, 299 (2015); Baudanza v. Comcast of Mass., 454 Mass. 622, 630 (2009) (same); Labonte v. Hutchins & Wheeler, 424 Mass. 813, 824 (1997) (it is an “error of law” warranting a new trial “if the damages awarded were greatly disproportionate to the injury proven”); Doconto v. Ametek, Inc., 367 Mass. 776, 787 (1995) (same). Mass.R.Civ.P. 59(a) expressly authorizes a judge to remit any amount of damages he adjudges to be excessive in order to bring the award within the range of verdicts supported by the evidence. See Clifton v. Mass. Bay Transp. Auth., 445 Mass. 611, 623 (2005).
The size of a verdict alone will not determine whether it is excessive. Rather, the reviewing judge must consider “whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.” Labonte, 424 Mass. at 825 (citation omitted). If the trial judge determines that a damages award cannot be sustained by any fair-minded construction of the evidence, a new trial may be ordéred if the plaintiff declines to accept a remittitur of so much of the award as the judge deems to be excessive. See Mass.R.Civ.P. 59(a); Evans v. Lorillard Tobacco Co., 29 Mass. L. Rptr. 231 (Mass.Super. 2011) (Fahey, J.), aff'd in part, rev’d in part, 465 Mass. 411 (2013).
At the outset, the Court acknowledges the considerable deference to which a jury’s general damage award is entitled, see Mirageas v. Mass. Bay Transp. Auth., 391 Mass. 815, 822 (1984), and the profound reluctance with which it approaches the prospect of disturbing a verdict returned by a jury that displayed diligence and attentiveness throughout the trial. That said, the damages awarded for Barbara Grimes’ claimed conscious pain and suffering cannot be sustained on any reasonable assessment of the trial evidence. Given the enormity of the award and the virtual dearth of pain and suffering-probative evidence supporting it, the Court concludes that the jury’s verdict is more likely the product of inflamed passion and pity than a proper application of the law to the facts demonstrated.
An award of $1,425,000.00 for the conscious pain and suffering of an individual decedent is, of course, a staggering verdict by almost any standard of measure. What confounds the Court, however, is not so much the size of the award but the absence of actual evidence in the trial record to substantiate it. As set forth ante, Barbara Grimes lived just four days following the accident; and of these four days, all but (at most) 29 minutes were spent in an unconscious state in which she exhibited essentially no brain stem activity. One cannot feel conscious pain when one is unconscious. As for the brief period post-accident spent awake in an ambulance, there is no evidence to suggest that Ms. Grimes suffered in any kind of extreme way. The discernible lacerations to her head were not profound, and Ms. Grimes herself gave no indication that she was in any severe pain or distress. There were no expressions of anguish, no writhing in agony, and no evident awareness that she was facing an imminent death.[1] Ms. Grimes had simply suffered a fall and, when pressed by an attending paramedic, she acknowledged that her head hurt. Our appellate courts have held that evidence of this very sort will not suffice to establish conscious pain and suffering liability as a matter of law. See e.g., Heng Or v. Edwards, 62 Mass.App.Ct. 475, 492 n.26 (2004) (even “[m]oans, groans, and other sounds [associated with pain] have generally been found insufficient to figure as evidence of consciousness”), citing Fialkow v. De Voe Motors, Inc., 359 Mass. 569, 574 (1971) (holding that “evidence . . . showing gasping, gurgling, heavy breathing, and a very faint noise coming from [decedent] after he was injured is [not] sufficient to create a jury issue on whether he suffered consciously”); Ghiz v. Wantman, 337 Mass. 415, 417 (1958) (no evidence of conscious *653 pain and suffering where witness testimony reflected that decedent “was bleeding from nose and mouth and moaning,” “trying to raise his head,” and “just mumbled some words, but you couldn’t make them out”).
On a disciplined and dispassionate review of the record in this case, the Court cannot identify any evidentiary basis to sustain the conclusion that $1,425,000.00 represents fair and reasonable compensation for the decedent’s quite limited conscious pain and suffering. It is, instead, evident that “the damages awarded were greatly disproportionate to the injury proven,” Labonte, 424 Mass. at 824, and that justice has miscarried.
Reinforcing this judgment is the Court’s inability to locate any jury verdicts or case authorities in this jurisdiction in which a million dollar pain and suffering award has been rendered on even remotely comparable facts. To the contrary, cases with even more compelling evidence of conscious pain and suffering than the present one almost uniformly reflect damage awards falling far outside this rarefied orbit. See, e.g., Aleo v. SLB Toys USA, Inc., 466 Mass. 398 (2013) (jury awarded $100,000 for conscious pain and suffering to estate of woman who struck her head on deck of swimming pool when water slide collapsed, resulting in fractured vertebrae, quadriplegia, and eventual death); Matsuyama v. Bimbaum, 452 Mass. 1 (2008) (jury awarded $160,000 for conscious pain and suffering where 46-year-old man lived for 14 months following misdiagnosis failing to detect cancer, a period in which decedent experienced physical pain and mental anguish over leaving wife and minor child); Renzi v. Paredes, 452 Mass. 38 (2008) (jury awarded $150,000 for five years of conscious pain and suffering to estate of decedent whose undiagnosed breast cancer led to her death); Guzman v. Pring-Wilson, 81 Mass.App.Ct. 430 (2012) (bench trial verdict of $10,000 for conscious pain and suffering of decedent who died of knife wounds to the heart); Freeman v. Mass. Bay Transp. Auth., 12 Mass. L. Rptr. 621 (2000) (Fabricant, J.) (upholding jury verdict of $10,000 for conscious pain and suffering to estate of pedestrian who collided with MBTA train, suffered a skull fracture, and lived for a matter of minutes in what the court called “a mental state [that] must have been one of sheer terror”); Bisceglia v. Worcester Housing Auth., 1995 WL 1688635 (Mass.Super.Ct. 1995) (Rup, J.) [4 Mass. L. Rptr. 459] (court awarded $80,000 for conscious pain and suffering where victim suffered serious pain from burns and skin grafts over period lasting more than a week); Litif v. U.S., 682 F.Sup.2d 60, 85 (D.Mass. 2010) (jury awarded $350,000 in conscious pain and suffering damages to Whitey Bulger’s murder victims who realized they were being strangled to death or stabbed with an ice pick causing “exquisite agony”).[2]
The Court is, of course, aware that comparing the juiy verdict of one case to another is a “dangerous game,” see Reckis v. Johnson & Johnson, 471 Mass. 272, 303 n.47 (2015); but such comparisons may provide a useful guide for gauging excessiveness. See Labonte, 424 Mass. at 826 n.17 (emphasizing that lower court did not “rely” on damage awards from other cases to reach its conclusion, but instead merely to “buttress” it). The Court has thus looked to other personal injury cases in Massachusetts only to reinforce rather than render its own decision regarding the unreasonableness of the Grimes pain and suffering verdict. Such decisions are, as noted ante, fully confirmatory to the Court’s judgment.
Confronted by a pain and suffering award whose size simply cannot be rationalized to the evidence presented at trial, the Court concludes that the jury’s verdict was more likely the byproduct of stirred passions, prejudices and sympathies. Although the Court notes no clear impropriety in the admittedly zealous advocacy of plaintiffs counsel in this case, it cannot be gainsaid that substantial portions of the closing argument of Attorney Breakstone drew the jury to emotion-led deliberations based on the fact of Barbara Grimes’ death. Thus, despite the fact that the jury was specifically and correctly instructed that Ms. Grimes’ death was to play no role whatsoever in their assessment of (and compensation for) any conscious pain and suffering she may have experienced while living,[3] plaintiffs counsel repeatedly called upon the jury to sympathize with the tragedy of this woman’s premature death. Plaintiffs counsel thus argued as follows:
[Ms. Grimes] had the right to close out her life on her own terms, as any human being would want to end their lives, in her own bed, surrounded by the people they loved, with the comfort and solace of the end of life knowing that you’re closing out your affairs on your own terms. She was robbed of that. They took that away from her; the end of her life.[4]
Whether such oratory crossed over the ethical line of permissible advocacy (an issue both parties spend over-long addressing) is ultimately immaterial to the judgment the Court is called upon to make when considering the Defendant’s Motion for New Trial. Improper or not, there can be no question but that the above-quoted argument had nothing to do with the case’s liability issues; nothing to do with the consortium losses of the decedent’s next of kin; and nothing to do with Ms. Grimes’ conscious pain and suffering. The argument was, instead, an inflammatory invitation to do precisely what the jury appears to have done here: namely, punish AMR for hastening a woman’s death, and compensate the Grimes estate not for the proper measure of the decedent’s conscious pain and suffering, but in pity for her premature loss of life. A $1,425,000.00 damages award rendered in the shadow of such advocacy, and as compensation for pain and suffering not substantially demonstrated by the evidence, is a verdict that will not withstand the scrutiny of Rule 59.[5]
*654 Plaintiff argues, in the alternative, that if the Court finds the jury’s $1,425,000.00 award for conscious pain and suffering to be excessive, it should simply reallocate the excess as an additur to the jury’s “unreasonably small” consortium awards. In support of this contention, plaintiff points to the aggregate damages figure of $1,500,000.00 and posits that the jury must have arrived at this round number first, and then simply apportioned the damages among the two wrongful death claims without giving much thought to the matter.
Plaintiffs self-serving suggestion is both entirely conjectural and at variance with the established case law in this area. If properly charged, “(t]he jury [is] presumed to follow the judge’s instructions.” Commonwealth v. Maynard, 436 Mass. 558, 571 (2002), citing Commonwealth v. Stone, 366 Mass. 506, 513 (1974). In the present case, the jury was appropriately instructed to determine liability and damages for each claim, separately, in light of both the evidence presented and the specific principles of law governing the respective claims. While conscious pain and suffering and loss of consortium are both species of Wrongful Death Act claims, they provide a prevailing plaintiff with compensation for two very distinct types of loss. The former, as its name suggests, compensates the decedent, albeit post-mortem, for suffering experienced prior to death. Hence the rule that “damages recovered for conscious pain and suffering are considered to be ‘assets of the estate of the deceased.’ ” Santos v. Lumbermens Mut. Casualty Co., 408 Mass. 70, 77 (1990), quoting Poblieglo v. Monsanto Co., 402 Mass. 112, 118 (1988). By contrast, loss of consortium damages compensate a potentially different party or parties, the decedent’s next of kin, for an entirely different type of injury: viz., the loss of the decedent’s “companionship, love, support, guidance, and nurture . . .” Norman v. Massachusetts Bay Transp. Auth., 403 Mass. 303, 306 (1988) (superseded on other grounds see St. Germaine v. Pendergast, 411 Mass. 615, 625 (1992)).
The verdict returned in the present case gives every indication that the jury properly grasped and respected the distinction between loss of consortium and conscious pain and suffering damages. Ms. Grimes’ next of kin were three fully grown siblings who lived remotely from the elderly decedent.[6] They loved their sister, of course, shared good times when together, and were naturally saddened by her death. But there was only limited evidence that Ms. Grimes was a source of special support, counsel, or comfort to these siblings, and the jury’s modest consortium award of $25,000 to each of them appears to bear a reasonable relationship to the evidence presented. This is not to denigrate the quality of the relationship that Barbara Grimes had with her brother and sisters, only to acknowledge the more limited purpose of consortium damages that the jury evidently understood. The Court sees no basis to disturb its judgment. See Bachini v. A.G. Edwards, 24 Mass. L. Rptr. 108 (2008) (“The court cannot disturb the jury’s verdict where, based on the evidence, the jury appears to have exercised an honest and reasonable judgment in accordance with the controlling principles of law,” quoting Netherwood v. American Fed. & Mun. Employees. Local 1725, 53 Mass.App.Ct. 11, 20 (2000)).
Where the jury has manifestly misapplied the law, however, is in connection with Ms. Grimes’ pain and suffering damages, an error in which plaintiffs counsel played a contributing role. In these circumstances, the Court will not accept the invitation of such counsel to compound the jury’s error by shifting large amounts of unjustifiable pain and suffering damages to consortium claims that the trier of fact clearly found not to warrant them.
CONCLUSION AND ORDER
It is the conclusion of the Court that, even indulging every fair inference for the plaintiff and for the verdict rendered in his favor by the jury, the highest conscious pain and suffering damages the trial evidence will sustain in this case is $425,000.00. Accordingly, Defendant’s Motion for New Trial or Remittitur (as to damages only) is hereby ALLOWED unless, within ten (10) days of the entry of this Memorandum of Decision and Order, plaintiff serves and files notice that he will accept reduced conscious pain and suffering damages in the amount of $425,000.00.[7] In the event the Court receives such notice, the existing judgment shall be vacated as to damages and a modified judgment in favor of the plaintiff shall enter in the total amount of $500,000.00. If no such timely notice is received, the Court will confer with the parties to schedule a new trial limited to the issue of damages.

 Some or all of this may be explained by the fact that Ms. Grimes was already under the influence of two potent narcotics she had taken for pain that morning in connection with her just-completed dialysis treatment.

 Although plaintiff has cited the Court to a handful of cases in which juries awarded more than $1 million in pain and suffering damages, none involved a record as bereft of probative evidence as this one. Rather, these cases, and others like them, consistently involved victims who suffered at least brief periods of intense physical agony, accompanied by a searing consciousness that the only relief from their pain would come from imminent death. See e.g., McIntyre v. United States, 447 F.Sup.2d 54 (D.Mass. 2006) (court awarded $3,000,000 in conscious pain and suffering damages to Whitey Bulger murder victim, stating, “for [the victim], the one to two minutes of physical and mental pain were an eternity”); Clark v. University Hospital-UMDNJ, 914 A.2d 838, 843 (N.J.App.Div. 2006) (upholding jury’s $2,000,000 verdict for conscious pain and suffering of decedent injured in car crash who, due to doctor’s negligence, choked to death on own vomit over a period of approximately 4 minutes); Maracallo v. Board of Educ., 21 A.D.3d 318 (N.Y.App.Div. 2005) (approving $2,000,000 conscious pain and suffering award for teenager who drowned over a period of approximately six minutes); Wischer v. Mitsubishi Heavy Indus. Am., Inc., 694 N.W.2d 320 (Wis. 2005) (jury awarded $1,400,000 in conscious pain and suffering damages to each of three ironworkers who fell 14 seconds to their deaths after crane collapsed). Likewise, in Massachusetts, trial courts have only *655 rarely found extraordinaiy damage awards to be sustainable, and the facts of such exceptional cases once again distinguish them dramatically from those of the case at bar. See, e.g, Bolles v. Vernon, 9 Mass. L. Rptr. 174 (Mass.Super. 1998) (Quinlan, J.) (upholding jury’s $1,000,000 award for conscious pain and suffering of decedent who battled breast cancer for 2 1/2 years and came to understand that defendant’s negligent diagnosis would lead to her death); Santos v. Chrysler Corp., 6 Mass. L. Rptr. 81 (Mass.Super. 1996) (Rouse, J.) (upholding jury’s $1,500,000 award for conscious pain and suffering of decedent injured in car accident who “suffered a slow and agonizing death over a period of six days . . . during which time she learned that her three children had [also] died” in the accident). None of these cases, each involving victims who suffered at least some period of intense personal torment prior to death, bear any meaningful similarity to the experience of Barbara Grimes reflected in the evidence.

 Nhe jury was likewise instructed not to factor bereavement over Ms. Grimes’ death into their assessment of the consortium damages sustained by her surviving siblings. Those damages were limited to the loss of services and support suffered by these next of kin, and were not to include recompense for Ms. Grimes’ own loss of life. See MacCuish v. Volkswagenwerk, A.G., 22 Mass.App.Ct. 380, 397 (1986), aff'd, 400 Mass. 1003 (1987).

 This was by no means the only example of counsel appealing to the jury’s sense of pity — not over the supportive sister that her next of kin lost, but over the remaining life that Ms. Grimes herself would never have. For instance, plaintiffs counsel elsewhere argued, referring to Ms. Grimes, that “[s]he had a life ahead of her. She had hopes and dreams and aspirations.” The Court does not agree that this was the most natural way to rebut the testimony of AMR’s defense expert that Ms. Grimes’ highly compromised medical condition prior to the accident gave her less than ten months to live. Such expert testimony regarding the decedent’s diminished life expectancy was relevant only to the losses suffered by Ms. Grimes’ claiming next of kin, and not to the putative pain and suffering of Ms. Grimes herself. Attorney Breakstone’s reference to Ms. Grimes’ dashed hopes and aspirations once again drew the jury to assessing damages on the basis of a consideration having no bearing on the task prescribed by law.

 The Court additionally notes that the closing of plaintiffs counsel included an argument that the jury should award his client between $7 and $9 million, a number he did not allocate between conscious pain and suffering and lost consortium damages. This is the kind of damages demand that the Court attempted, prior to closing, to caution Attorney Breakstone exceeded fair advocacy based on the evidence.

 None lived with her, and two lived out of state.

 Such damages shall be in addition to the $75,000 lost consortium damages that were separately awarded to Ms. Grimes’ next of kin, which damages were not the subject of Defendant’s Motion for New Trial or Remittitur.